*84 ' Opinion op the Court,
by Ch. J. Boyle.
ON the 20th of October, 1817, Miller let Ridgeway have a note on David Dodge for $1,0Q0, advanced to bina $700 in money, and gave him his own note for $^54 16 cents, payable at a short day, which, together with interest on Dodge’s note, at the rate of fifteen per centum per annum, from the time it became due, amounted to $2,000, in consideration of which, Ridge-way conveyed to Miller, by an absolute deed of bargain and sale, 100 acres of land, whereon Ridgeway lived, and Miller, by an instrument of writing signed by him on the same day, stipulated that Ridgeway should con^nue to occuPy the land for eighteen months, and bound himself to sell and convey to Ridgeway the land again, provided Ridgeway would pay him, at the end of lhat time, $2,450. Not long after this, Ridgeway bécame indebted to Miller, on other transactions, and being unable to pay the money, solicited and obtained ^10m Miller, indulgence therefor, until the end of the months; and by the agreement of the parties, Miller took up the former writing, binding himself to re-sell to Ridgeway, and executed another, binding himself to sell to Ridgeway, upon his paying to Miller, at the expiration of the eighteen months, in addition to the sum of $2,450, the amount of the debt which he had otherwise contracted, with interest at the rate of IS per centum per annum, until the time of payment, When the eighteen months were about to expire, Ridge-way not being able to pay, Miller stipulated to prolong the time for a short period, upon terms agreed on, and took up the last instrument binding himself to re-sell to Ridgeway, and executed another to the same effect; when the prolonged term was near an end, Ridge-way paid to Miller, in part discharge of the amount he bad contracted to pay, a note which he held on Didlake Bullock, at a discount of 15 per centum; and being still unable to pay the balance, Miller agreed to prolong the time to re-purchase for one year, and executed a writing, bearing date the 29th day of May, 1819, of the following import:
assignee the moí" ted to redeem upon the payment of the due.
ther the contra°t_ for illethe time of making the thefo^ bearance, it is usury,
“If Ninian Ridgeway pays me the sum of two thousand one hundred and seventy-two dollars and eighty-six cents, on the 20th day of April next, I promise to sell and convey to him the hundred acres of land I purchased of him. The said sum of two thousand one dred and seventy-two dollars and eighty-six cents covers the purchase money and the balance of rent that will then fall due, on the said 20th day of April next; of course, said Ridgeway will hold possession until then; and if he fails to pay the above mentioned sum, he is to give up possession of said premises, in as good repair as they are at present. Witness my hand, this 29th of May, 1819. William Miller.”
Before the expiration of the time allowed by this instrument for the re-purchase, Skinner, who had ed a judgment and execution against Ridgeway for wards of five hundred dollars, procured an assignment of the instrument to be made by Ridgeway to him; and not long after the expiration of the time'for the repurchase had expired, he filed this bill, alleging the transaction was usurious, and that the conveyance made by Ridgeway to Miller, was a mere shift or device to evade the statute against usury, and in effect thing but a mortgage; and he insisted, as the assignee of Ridgeway, as well as his creditor by judgment and execution, upon his right to redeem, upon paying what was really due.
Ridgeway, who was made a defendant, admits the truth of the material allegations of the bill; but Miller, in his answer, denies that the transaction was usurious, and alleges that the conveyance to him was not a mortgage, but a bom fide sale, with liberty to re-purchase, upon the payment of thé price he had received, together with the rent.
The circuit court, on a final hearing, dismissed the bill, and Skinner has appealed to this court.
The main question is, whether the conveyance from Ridgeway to Miller, with the agreement of the latter, that the former should have the right of re-purchasing, is to be considered as a mortgage of as a conditional sale. If it be taken to be the latter, then, as the condition was not performed within the time prescribed by the agreement of the parties, the conveyance became absolute, and the right to redeem no longer exists; but if the former is the point of view in which it is to be *86 considered, the right of redemption is indisputable* The distinction between a mortgage and a conditional sale, is recognized by courts of equity, as well as courts of law; but it is often a nice and difficult question, to determine to which class any given case properly belongs, and courts of equity have, in all doubtful cases, shown an inclination to treat them rather as mortgages than conditional sales.
In this case, it was undoubtedly the design of the parties to clothe the transaction in the garb of a conditional sale; but the exterior appearance of a transaction is not always conclusive evidence of its true nature; for, whenever it is infected with usury or fraud and oppression, it is consistent with the best established rules of evidence, to permit proof that its real character is different from what it imports to be on the face of the transaction; and hence it is laid down as a gener-. al rule in such cases, that where a conveyance is intended as a security for money, whether this intention appears from the deed itself, or from other circumstances, it is always considered in equity as a mortgage, and redeemable, even though there be an express agreement of the parties that it shall not be redeemed, or that the right of redemption shall be confined to a particular time. See Butler’s note (b,) to Co. Litt. 205 (a,) and the cases there cited.
In this case, there are several circumstances which; while they tend to show the real object of the transaction to be a security for the money advanced by Miller to Ridgeway, at the same time evince the propriety of admitting proof of them, as evidence for that purpose. In the first place, Ridgeway was in laboring circumstances, and greatly distressed for want of money, and this was well known to Miller; for he had before lent to Ridgeway money on exorbitant interest, and although that loan had, some months before, been brought to a close, and cannot be considered as directly connected with this transaction, yet it is a circumstance which shows that Miller knew Ridgeway’s distress, and was disposed to take advantage of it.
In the second place, the conveyance from Ridgeway to Miller grew out of an application from the former to borrow of the latter either money or Dodge’s note, and a communication for a loan has always been considered as entitled to some weight in proving that a convey *87 anee in which the application has resulted, is in its true nature a mortgage, and not a sale.
In the third place, the money advanced by Miller appears to have been greatly inadequate to the price of the land at the time of the transaction, and the money reserved to be paid by Ridgeway on the redemption of the land, in addition to that which was stipulated as the price, was at the rate of 15 per centum per annum on that price, which was precisely the rate of interest which Miller was in the habit of exacting of Ridgeway for loans or forbearances of money, and is proved to be much above the amount of the rent for the use of the place.
And fourthly and finally, the circumstance which most conclusively evinces that the conveyance should be considered as a mere security for the money advanced by Miller, is, that it was so treated by him and Ridgeway, in regard to thé money which Ridgeway owed to Miller on other accounts, as was unquestionably done, by adding the amount which Ridgeway was so indebted, to the price which he had before agreed to pay, and stipulated for the payment of the whole on the redemption of the land.
It follows, therefore, that Skinner had a right to redeem, and that the circuit court erred in dismissing his bill. But a question of some moment here occurs, Which it is necessary to settle, and that is, whether Miller has a right to interest upon the money advanced by him to Ridgeway, or not. If this question depended upon the original contract between Miller and Ridge-way, there would be no doubt that we should be bound to respond.]in the negative; for as the law was at the date of that contract, if a bill in chancery were filed to be relieved from an usurious contract, as this was, the lender was compelled to take his principal without interest; but, by an act of the 6th of February, 1819, the law in this respect has been changed, and it is declared that “in no case, either at common law or in chancery, shall the lender be prevented from recovering the debt with lawful interest thereon;” and it was since the passage of that act, that the parties entered into their last contract, postponing the time of payment.
This may perhaps be said to be a contract for the forbearance, and not for the loan of the money, and it has been contended, that the act of the 6th of February, *88 1819, embraces contracts of the latter description only; but this argument cannot be admitted to be well founded. The act of the 6th of February, 1819, with respect to the contracts embraced by it, is an exact copy of the prior act of this country, which, in the same respect, was a transcript of a Virginia act upon the same subject; and that was taken from a statute of Ann of England; and it has been invariably held by the English courts, under their statute, as well as by the courts of Virginia and of this country, under their respective acts, that a contract for the forbearance of money, as well as a contract for the loan of money, was embraced by the law. It is, indeed, often said in the books, that to make a contract usurious, there must bo a loan of money, and lending and borrowing at an illegal rate of interest; but it is laid down, that “it is not material whether the contract for illegal interest be made at the time of making the loan; for if there be a preexisting debt, the forbearance of it may be usurious, and is nothing more than lending the money for a further time.” Ord on Usury 28, and the authorities there cited.
The decree must be reversed with costs, and the cause be remanded, and an account taken, to ascertain the balance of principal and legal interest which may be due from. Ridgeway to Miller after allowing to. Ridgeway credits for all payments made, and that Skinner be permitted to redeem the mortgaged premises, upon paying to Miller what may be due to him, within a reasonable time; and that such other proceedings be had, as are not inconsistent with the rules of equity.