## DUNAWAY et al. v. PURYEAR et al.

(Circuit Court of Appeals, Sixth Circuit. October 4, 1921. On Motion to Modify Judgment, December 15, 1921.)

No. 3497.

1. **Appeal and error ⇐931(1), 1009(4)—Conclusions of trial judge presumptively correct, and conclusive unless evidence clearly preponderates against them.**

Conclusions of the trial judge in an equity case on disputed question of fact (where testimony is taken in open court) are presumptively correct, and will be accepted on appeal, unless the evidence clearly preponderates against them.

2. **Mortgages ⇐32(1)—Contract and deed held absolute conveyance.**

A written contract, providing, not merely for a conveyance, but for a "sale and conveyance" of an undivided one-third interest in land, *held* to evidence an absolute conveyance, and not a mortgage, notwithstanding a further provision that "on extinguishment of said debt this contract shall end"; the contract providing that the grantee of the third interest go on the land and by cutting timber pay off a mortgage thereon, and that such interest in the land be reconveyed in case the grantee die before the expiration of the contract.

3. **Contracts ⇐10(1)—Deeds ⇐17(1)—Contract and deed held not lacking in mutuality or consideration.**

A contract and deed conveying absolutely a one-third interest in land, whereby grantee was to go into possession of the land, furnish labor for cutting timber to pay off an existing mortgage, and under which he personally assumed one-third of the mortgage debt, *held* not lacking in mutuality or consideration.

4. **Deeds ⇐70(5)—Contract and conveyance held not unconscionable.**

As bearing on the issue of constructive fraud, a contract and deed whereby grantee was conveyed absolutely a one-third interest in land, in consideration that he personally assume one-third of the mortgage indebtedness, and take possession of the land, cut timber, and pay off the existing mortgage, which amounted to only one-third of the value of the land, but which the owners were unable to pay, was not unconscionable, where the owner was not a desirable man to deal with financially.

5. **Deeds ⇐70(5)—Unconscionableness must be tested by conditions existing at time.**

The question of the unconscionableness of a contract conveying a one-third interest in mortgaged property, in return for services to be exerted toward payment of the mortgage from timber on the land, must be tested by the conditions which existed at the time of the conveyance.

6. **Deeds ⇐71—Grantee of interest in land and mortgagees held not guilty of oppression.**

In an action to cancel a contract and deed, whereby a one-third interest in land was absolutely conveyed in consideration that the grantee assume one-third of mortgage indebtedness, enter on the land, cut timber, and pay off the mortgage indebtedness, which amounted to one-third of the value of the land, but which the owners could not pay off, *held*, that neither the grantee nor the mortgagees, who were threatening to foreclose and sell the land, were guilty of oppression and duress.

Appeal from the District Court of the United States for the Western District of Tennessee; John E. McCall and Andrew M. J. Cochran, Judges.

⇐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

276 F.—14

Suit in equity by Cora A. Dunaway and husband against J. N. Puryear and others. Decree for defendants, and plaintiffs appeal. Affirmed.

John Cashman, of St. Louis, Mo. (George Fryer, of Paris, Tenn., on the brief), for appellants.

S. P. Fitzhugh, of Memphis, Tenn. (Fitzhugh & Rye, of Paris, Tenn., on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Appellants are husband and wife and reside at St. Louis, Mo. Mrs. Dunaway owned a tract of land in Henry county, Tenn., containing about 1,200 acres, partly timbered and partly cultivated. December 18, 1916, the Dunaways borrowed, in substance, from the Cottage Grove Bank & Trust Company, located at Cottage Grove, Tenn. (hereinafter called the bank), $9,000, giving a note for $9,900 (being the principal and interest at 10 per cent. for one year), payable one year from date, securing the same by deed of trust (hereinafter called a trust mortgage) upon the land, running to appellee Rainey, a prominent stockholder in the bank. The note was not paid at maturity, and Rainey instituted foreclosure proceedings, advertising the land for sale on April 8, 1918. The Dunaways, being unable to pay the mortgage, made on June 1, 1918, a written contract with appellee Puryear—who at the time the loan was made was cashier of the bank, but who had resigned about February 1, 1917—under which the Dunaways conveyed to Puryear an undivided one-third interest in the tract (Puryear assuming the payment of one-third of the mortgage debt), and whereby the entire tract was to be delivered to Puryear's exclusive possession, management, and control for a period not exceeding five years from the 2d day of September then next,[1] for the purpose of cutting ties, cutting and removing timber, and converting the same into lumber or merchantable products, to be disposed of according to Puryear's judgment, as well as for the cultivation of the land then or thereafter cleared. Puryear was to advance the necessary funds for carrying out the contract, and was to receive the income and profits from all sources; his determination in the management of the land, timber, and lumber and "making of contracts" was to be final and conclusive. The contract provided that all income and profits, after deducting expenses, should be applied to the extinguishment of the mortgage debt, "and for the joint benefit of the parties to" the contract. There was express provision that, if the mortgage indebtedness should not be fully paid off and discharged during the contract period, Puryear should still owe one-third of the balance of the debt, and the Dunaways the other two-thirds. There was further express agreement, that in the event of Puryear's death during the life of the contract, Mrs. Dunaway should be entitled to a reconveyance of the one-third conveyed to Puryear, upon the payment to the latter's representative of $200 per month from September 3, 1918, until Pur-

[1] Mrs. Dunaway was given until September 3, 1918, in which to pay the mortgage debt, in which event the contract should at once terminate.

year's death. After about September 2 or 3, 1918, Puryear took possession of the tract and proceeded to carry out the contract, cutting and selling ties and timber.[2]

In March, 1919, Puryear obtained in a state court of Tennessee an injunction restraining asserted interference by Dunaway with Puryear's operation under the contract, and on April 30, 1919, this suit was brought by Mr. and Mrs. Dunaway in the District Court below against Puryear, Rainey, the bank, and five workmen, asking a cancellation of the contract and deed of June 1, 1918, for the recovery of damages for alleged waste and other alleged misconduct by Puryear, for the elimination of asserted usurious interest on the mortgage loan, and for injunction against Puryear from further operations on the land, and against the bank from foreclosing the trust mortgage. The prominent grounds on which the right to such relief was asserted, so far as necessary now to be stated, were that the making of the contract and the conveyance of a one-third interest in the tract to Puryear, as well as the latter's possession of the entire tract, were obtained by active fraud, especially in that Puryear had agreed, as asserted, to make and deposit in escrow a reconveyance to Mrs. Dunaway of the one-third interest conveyed to him, to be delivered and become fully operative as soon as the mortgage debt should be fully paid off; in that connection, that the two instruments of June 1, 1918, were represented by Puryear as desired by the bank and were intended to be an additional security merely for the benefit of the bank and for the payment of its mortgage debt;[3] that the contract lacked consideration or mutuality, and was unconscionable; that Puryear's operation under the contract had been inefficient and wasteful, resulting in delaying the proper payment of the mortgage indebtedness; and that he had refused to account for the moneys received under the contract.

Rainey, Puryear and the bank filed answer and cross-bill,[4] denying all the material allegations of the bill respecting misconduct and misrepresentation, and expressly denying an agreement by Puryear to reconvey the one-third interest, or that the contracts under date of June 1, 1918, were taken merely for the benefit of the bank, asserting Puryear's ownership of the undivided one-third interest in the tract, his proper performance of the contract, unlawful interference by Dunaway with Puryear's operations thereunder, and praying the enforcement of the contract, the foreclosure of the deed of trust, the distribution of the proceeds of the contract's operation after payment of the mortgage indebtedness between the Dunaways and Puryear in the proportions of two-thirds and one-third, and for receivership and injunction.

Final hearing was had on the merits before the late District Judge McCall; the testimony of the Dunaways, Puryear, and Rainey, and

[2] The Dunaways had paid nothing upon the mortgage debt, except as Puryear, on the signing of the contract, indorsed to them a note for $400 to carry the interest from June 1st to September 3d.

[3] We treat the bill as broad enough to include, as a ground of relief, the alleged fact that the deed and contract were taken as security for the mortgage debt to the bank.

[4] The other defendants joined in the answer proper.

of the more important witnesses to the merits, being taken in open court. Judge McCall found as facts that the deed to Puryear of the one-third interest was intended as an absolute deed, that there was no agreement for reconveyance thereof upon the payment of the mortgage debt, that the contract and deed were not intended as additional security for such payment, that the contract was not unconscionable, but was advantageous to the Dunaways, in that the contract and deed were executed to prevent the sale of the land under the mortgage, and to enable the Dunaways to save all of it, except the one-third conveyed to Puryear for his assistance. By the final decree the Dunaways recovered usurious interest to the extent of $495 (an excessive 2 per cent. per annum), and were awarded one-fourth of the costs of the case; otherwise, the bill was dismissed. The contract and deed of June 1, 1918, were declared valid and binding. Temporary injunction against Dunaway's interference was made permanent. This appeal is from that final decree.[5]

[1, 2] The equitable principles involved in this hearing are elementary. If the making of the contract and deed were in fact obtained by the alleged fraud, or if the two instruments were, when made, intended as a mortgage, or if they were without mutuality or consideration, or if the contract with its attendant conveyance was unconscionable, or has been used in actual oppression or duress of plaintiffs, relief should be given. The final determination of the case turns wholly on disputed questions of fact, as to which the conclusion of the trial judge is so far presumptively correct that we are bound to accept it, unless the evidence clearly preponderates against it. In re Snodgrass (C. C. A. 6) 209 Fed. 325, 126 C. C. A. 251. The questions whether the contract and deed were obtained by fraud and whether they were intended as additional mortgage security are interrelated subjects. The question of actual fraud, so far as distinguished from the mortgage quality of the instruments given, turns upon the question whether Puryear agreed to make and deposit in escrow a reconveyance to Mrs. Dunaway of the one-third interest conveyed to him, to take effect as soon as the mortgage debt should be fully paid off. The trial court found that "such promise was never made by Puryear, the bank, or any one." We think this conclusion amply sustained by the weight of the evidence. The written contract in plain and unambiguous language provides, not merely for a conveyance, but for a "sale and conveyance" to Puryear of an undivided one-third interest in the land. Equally clearly and unequivocally, and in harmony with the consideration just stated, Puryear assumed the payment of one-third of the mortgage debt, in express terms made to extend to the balance, if any, of the debt which might remain unpaid at the expiration of the contract period.

The effect of these explicit provisions is not, in our opinion, overthrown by the further provision that "on extinguishment of said debt

---

[5] After the decree was entered, motions for leave to amend the bill to meet asserted proofs and for rehearing were denied. If the decision on the merits was correct, these denials are unimportant, and they are not discussed in the briefs of counsel.

this contract shall end." Considered in connection with all the other contract terms, including the provision that the contract should be ended in case Mrs. Dunaway should succeed in paying off the debt by September 3d, following the making of the contract, the natural and plain meaning carried by the face of the written instrument is that, on the extinguishment of the debt through Puryear's management and operation, the contract relating to such management and operation (not the deed of a one-third interest given as part payment therefor) should cease. The evidence does not justify rejecting this natural meaning, so disclosed by the face of the contract. The testimony, given by both plaintiffs, of the actual making by Puryear of the claimed representations, is disputed, not only by Puryear, but by the disinterested draftsman of the instruments,[6] both of whom say that the alleged promise to reconvey referred only to the contingency of Puryear's death during the contract period, which was expressly provided for in the written contract. The facts appearing in the record otherwise strongly discredit the testimony of both plaintiffs, as well as that of another witness, who testified to alleged admissions by Puryear.

The trial judge in terms found that "the evidence decidedly fails to support the contention" that the deed and contract were intended as additional security to the mortgage debt. We think the weight of the evidence sustains that conclusion. Here, again, plaintiffs' contention is in the face of the unambiguous language of the written contract, and the proof offered to sustain it is anything but convincing. Plaintiff's testimony to the effect stated is disputed by both Puryear and Rainey, and in part by two other witnesses. The trial judge well said that there was no need for additional security, inasmuch as the land was worth three times the amount of the mortgage debt; that the conveyance of one-third of the tract added nothing to the mortgage security; that three months were given plaintiffs to afford additional opportunity to pay off the mortgage, and that Puryear himself arranged for money to pay the interest on the note during that three months; and that the contract and deed were executed to prevent sale under the mortgage and to enable plaintiffs to save all of it, except the one-third which they conveyed to Puryear for his assistance in the matter. The evidence, taken together, is not convincing that the bank had any interest in the deed or contract, or that the giving of these instruments had any relation to the bank's benefit, except as the bank undoubtedly preferred to have the debt paid without foreclosure and sale, and so was willing to delay such sale in the event of an arrangement such as that with Puryear, which seemed reasonably to assure such payment. In our opinion the charge of conspiracy between Rainey, the bank, and Puryear is not made out. The fact that when this case was heard below Puryear had become president of the bank is not of great significance.

[3-5] We see no merit in the contention that the contract and deed were lacking in mutuality or consideration. Both these elements are

[6] The trial judge says of this draftsman: "He is a good lawyer, and did this work for these parties not as an attorney for either party but for an accommodation."

'found in the assumption by Puryear of one-third of the mortgage debt, his agreement to furnish the funds for operating the contract, and the assumption of labor and responsibility on his part in that regard, and the distinct advantage to plaintiffs in such arrangement, in view of their manifest inability otherwise to raise the money at the time to prevent the foreclosure sale under the trust mortgage; a condition which is not negatived by the fact that after Puryear had actively begun operations under his contract opportunity may have been had to raise money elsewhere. The evidence sustains an inference that Dunaway was not a desirable man to deal with financially. These considerations effectively answer the charge that the contract was unconscionable. The trial judge said:

"When the consideration passing to plaintiffs for the one-third interest conveyed to Puryear, as disclosed by the evidence, is considered, it cannot be said of a truth that it is unconscionable. Indeed, when considered in the light of the facts and attending circumstances as of the time of the transaction, it appears that the contract was advantageous to plaintiffs."

In this conclusion we fully agree. An opposite conclusion is not justified by the changed conditions which Puryear's efforts and the better financial situation which followed the Armistice in November, 1918, had effected. It may well be that, if plaintiffs had been able to defer the foreclosure sale until a reasonable time after the close of the war (a date then wholly conjectural), they might have saved the entire of the land (less the mortgage) without Puryear's help; but the record is to the contrary of such ability. The question of unconscionableness must be tested by the conditions which existed on June 1, 1918, when the foreclosure proceeding was ripe for final sale, and plaintiffs were without means to avoid the same, except through some unusual arrangement.

[6] We also think the charge of oppression and duress not sustained. The allegations of inefficiency and waste on Puryear's part are overthrown by what he has accomplished. In spite of the difficulties in obtaining and retaining labor, occasioned at first by its scarcity and latterly contributed to by Dunaway's unjustifiable interference with Puryear's operation, in taking possession of portions of the land and intimidating workmen employed by Puryear, it appeared that, when the trial was had below,[7] Puryear had succeeded in paying on the mortgage debt, from the net proceeds of timber and management of the property, $3,471.69, that he already had on hand timber worth net $3,125 (whose application would reduce the note to a little more than $4,000), and that he had reasonable expectation of completing payment of the entire debt within another year. If this probable result is obtained (and the record does not discredit such probability), plaintiffs have saved an undivided two-thirds interest in this tract without incumbrance, and have escaped the reasonable possibility, to say the least, of losing the entire of their interest. The greater the value of the land (Puryear admits it is worth $30,000 to $35,000; plaintiffs claim it is worth $100,000), the greater the benefit to plaintiffs. Giving due weight to all the testimony in the case and the various consider-

---

[7] The trial was begun October 31, 1919.

ations adduced (we have not attempted to discuss them all on either side), we are convinced that plaintiffs are not shown to have been wronged or overreached, but that the record indicates that the result reached below has worked substantial justice.

The testimony of alleged discouragement by Rainey and Puryear of the refunding of the loan by plaintiffs after Puryear's operation was well under way has no impressive significance. In large part it was either denied, or offer of denial made. If Puryear's contract was valid, he, as owner of a one-third interest, was under no obligation to encourage a refunding of the mortgage debt, which he was then actively engaged in paying off under his contract.

The decree of the District Court is affirmed.

## On Motion to Modify Judgment.

PER CURIAM. Appellants ask that the opinion and judgment of this court be so modified as to leave to the discretion of the District Court how far appellants may investigate the good faith of respondent Puryear in executing the contract in question and accounting for proceeds of the timber.

The decree below, which was affirmed by this court, has finally established the validity and enforceability of the contract of June 1, 1918. It constitutes a final rejection of appellants' allegations of waste as affecting the validity of appellants' right to terminate or avoid the contract. It finally dismissed plaintiffs' bill, except in certain particulars not now important. It precludes all further question of the good faith of defendant Puryear in entering into the contract or procuring its execution by appellants.

When the testimony was taken, however, the mortgage had not been fully paid, and there was no occasion for an accounting of receipts and disbursements and operations under the contract. In our opinion, the trial court's action upon the question of damages did not have the effect, in view of the dismissal of the bill, of retaining jurisdiction over an accounting of receipts and disbursements and contract operations.

We find nothing in the previous opinion of this court which affects the question of the extent to which the alleged wastefulness on the one hand, or good faith on the other, in cutting and marketing the timber, or in otherwise carrying out the contract, would be related to or could be considered in any accounting which might be had in another action respecting defendants' operations under that contract, which must be treated as valid and enforceable.

The reference in our previous opinion to the allegation of "inefficiency or waste on Puryear's part," as overthrown by what he had accomplished, was properly addressable to alleged waste, as giving right to terminate a contract otherwise valid.

The petition for modification of judgment is accordingly denied.