## Lunsford v. Colwell.

(Decided May 22, 1923.)

## Appeal from Perry Circuit Court.

1. Mortgages—In Doubtful Cases Instrument is Held to be a Mortgage and Not Conditional Sale.—In ascertaining the intention of the parties to an instrument to determine whether the instrument is a conditional sale or a mortgage, the courts will be guided more by the substance than the form of the transaction, and in doubtful cases will always construe the contract to be a mortgage, because such construction will be more apt to prevent fraud and oppression.

2. Mortgages—Instrument Intended as Security for Loan is Mortgage.—The test in every case to determine whether an instrument is a mortgage or not is whether it was intended as a security for the loan of money or other property. If so, it is a mortgage.

3. Mortgages—Lender's Refusal to Take Mortgage Does Not Affect Nature of Instrument Intended as Security.—The fact that the lender repeatedly stated he would not take a mortgage, or adopted other means to conceal the truth, is immaterial on the issue of whether the instrument is a mortgage, if in fact it was intended as security for the loan.

4. Mortgages—Deed with Clause for Resale to Grantor Held a Mortgage.—Where an owner of land for which he had agreed to pay $350.00, and on which he had paid $150.00, applied for a loan and agreed to give a mortgage as security, a subsequent instrument given by him in the form of a conveyance for the consideration of $75.00, with a provision that the grantee would convey the property back on repayment of the $75.00 and interest, was intended as security for the loan, and was not a sale with

option to repurchase, so that the borrower is entitled to a re-
conveyance of the property on repaying the loan with interest,
though he did not repay it within the time fixed.

WOOTTON, SMITH & WOOTTON and KELLY KASH for appel-
lant.

SAM WARD for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On September 1, 1919, Walker Lunsford executed and
delivered to J. D. Colwell an instrument of writing by
which he, as party of the first part, sold and conveyed to
Colwell, as party of the second part, three lots in the
town of Hazard. The instrument contains the following
provision:

"To have and to hold unto the party of the second
part, his heirs and assigns, together with all the appurte-
nances thereunto belonging, forever, with covenants of
general warranty: Provided, however, that second party
binds himself to first party that if first party, within
seven days, pays to second party $75.00 and interest and
the cost of these conveyances, he will reconvey him said
property."

Claiming not only that he tendered to Colwell the
debt, interest, etc., within seven days, but that the in-
strument itself was intended as a mortgage, Lunsford
brought this suit to enforce a reconveyance of the prop-
erty. On final hearing the petition was dismissed and
Lunsford appeals.

Appellant testified that he wanted $75.00, and offered
appellee a mortgage on the lots if appellee would let him
have the money. Appellee replied that he did not have
the money, but would try to get it for him. That after-
noon he saw appellee, who stated that he had the money.
At first he told appellee he would give him $10.00 interest,
but later on he told appellee he would give him $5.00 and
pay the money when he gave the mortgage. Appellee
paid him the $75.00, and he immediately gave appellee
$5.00 as interest. On September 3rd he went to his home
and returned on the 4th, when he met appellee in front of
the court house, and told him that he wanted the mort-
gage and offered to pay him the money. Appellee replied
that he was busy, and had to go to First creek. On the
7th of September, which was Sunday, he looked every-
where for appellee, but could not find him. On the 8th,
he also looked for appellee, but heard that he was at home

sick. On that day he sent word by a little boy to appellee to come down town and received from appellee the following note:

"9-8-1919

"DEAR MR. LUNSFORD, I am sick cant come today cant be down in town think I will be able to be down tomorrow. "(Sd.) J. D. COLWELL."

He did not see appellee on the 9th, but on the 10th started towards his home and met appellee coming down town. He told appellee that he was ready to pay off the mortgage. Appellee just laughed and said, "Oh, you are too late. You needn't go crying around me this way." At first he thought appellee was "kidding him," but finally he saw that appellee would not pay any attention to him, and that he had to do something about it. In executing the instrument, he intended for appellee to hold it as a security until he could return the money. On cross-examination he stated that he was not present when the instrument was drawn up, but read it twice before signing it. When the boy brought back the note on the 8th, he did not go to appellee's house, as he knew appellee was sick, and did not want to be bothered. It seemed to be the understanding when the instrument was written up that if he did not pay the money back in seven days the title to the property was to go to Mr. Colwell. He saw that when he wrote the instrument and signed it. At the time he did not sign or execute any note. He further stated that he agreed to pay $350.00 for the lot and had paid $150.00.

James Isaacs, a brakeman for the B. & O. Railroad Company, testified that he saw Lunsford and Colwell in front of the court house on September 4th. Mr. Lunsford told Colewll that Colwell had a mortgage which he (Lunsford) wanted, and at the same time pulled out some money. Colwell told Lunsford he did not have time then, that he wanted to catch the First creek train, that any time would be all right.

Appellee testified that Lunsford came to him and wanted to borrow some money. He told Lunsford that he would not take a mortgage on the lots, that he really did not have the money to spare and was not able to wait until he paid the money back. He did tell him, however, that he would buy the lots for $75.00. Lunsford then asked if he would agree verbally to deed the lots

back. He replied that he would do so, and Lunsford replied that seven days was as long as he wanted the money. He then told Lunsford that he would have the deed prepared. Mr. Turner prepared the deed, and put in the deed the provision about the repayment of the $75.00 in seven days. He then went to the clerk's office with Lunsford, who read over the deed and said it was satisfactory. He did not see Lunsford within seven days from the execution of the deed. Lunsford did not offer to pay him back the money on the 2nd or 3rd of September. It was ten days after the execution of the deed before he came and wanted to pay him the $75.00. He admitted that Lunsford sent a note to him by a boy, and that he answered that he could not be down town on that day, which was the 8th of September. In his note to him Lunsford told him in substance to come down town, that he wanted to buy the property back. Lunsford did not offer to buy the property back until the 10th of September. He further stated that he gave Lunsford a check for $75.00 and that he did not retain any money for interest.

Mortgages and conditional sales are both valid, and it is often a matter of great difficulty to determine to which class a particular instrument belongs. The only way of solving the question is to find out what the parties intended. In ascertaining their intention the courts will be guided more by the substance than the form of the transaction, and in doubtful cases will always construe the contract to be a mortgage, as such construction will be more apt to prevent fraud and oppression. Edrington v. Harper, 3 J. J. Mar. 353; Skinner v. Miller, 5 Littell 86. The test in every case is, was the instrument intended as a security for the loan of money or other property? If so, it is a mortgage. Skinner v. Miller, *supra.* When such appears to be the nature of the transaction, it is immaterial that the lender repeatedly stated that he would not take a mortgage, or adopted other means to conceal the truth. Kerr v. Gilmore, 6 Watts 405. In the case before us appellant owned lots, for which he had agreed to pay $350.00, and on which he had paid $150.00. While he needed $75.00, he wanted it for only a short time. He did not approach appellee with the view of selling him the lots. On the contrary, he applied to appellee for a loan of money, agreeing to give him a mortgage on the lots. Appellee says that he declined to take a mortgage, but did agree to buy. Appellant asked if

he would agree verbally to deed the lots back, and he replied that he would. Thereupon the deed was prepared. Appellant says he paid appellee $5.00 interest, and the transaction was closed. This statement is denied by appellee. However, the deed itself provided that appellee agreed to reconvey the property if appellant, within seven days, paid to him $75.00 and *interest*. Taking into consideration the fact that the lots were worth much more than $75.00, that the negotiations were begun for the purpose of procuring a loan, and that the transaction was carried out by an instrument in which appellee agreed to reconvey the property to appellant upon the payment, within seven days, not only of the principal amount of $75.00, but of interest thereon for that period of time, we are constrained to the view that the instrument was intended merely as a security for the money advanced, and was therefore a mortgage.

Judgment reversed and cause remanded with directions to enter judgment granting appellant the relief prayed for.