## Wade v. McGinnis.

(Decided Nov. 29, 1932.)

STOUT & HERDMAN, J. W. WADE and J. U. WADE for appellant.

D. A. McCANDLESS and J. S. LIVELY for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

In 1922, R. K. McGinnis, who was considerably in debt at the time, died a resident of Warren county, leaving a will by which he devised jointly to his widow, Sarah McGinnis, his second wife, and his son by a former marriage, Walter McGinnis, a business house on State street in Bowling Green. Mrs. McGinnis agreed to buy the property for $7,500, and deposited $500 as liquidated damages in the event she failed to carry out her contract. She was unable to raise the money, and lost the $500. Thereafter the property was sold under a judgment rendered prior to the testator's death, and at the sale Mrs. McGinnis purchased the property for $7,000, and executed a sale bond with two sureties. When the sale bond matured, one of the sureties was very ill, and not wishing to trouble him about the matter, and not being able to pay the bond herself, she, through her brother, applied to her brother-in-law, Judge J. U. Wade, for assistance. He declined to go on her bond, or to make a loan, and during the negotiations nothing was said about her owing him any money that he put in the property. On the contrary, the negotiations resulted in the execution of the following contract, dated January 24, 1923:

"This contract made and entered into this Jan. 24, 1923, by and between Mrs. R. K. McGinnis, Bowling Green, Kentucky, County of Warren, party of the first part, and J. U. Wade, Russellville, Kentucky, party of the second part:

"Witnesseth: That whereas the party of the first part purchased from Walter McGinnis, the one-half (½) interest in the R. K. McGinnis shop and lot in Bowling Green, Kentucky, on State street between 8th and 9th Streets, at the total price of $7,500.00 and failed to pay for same according to said agreement of purchaser and on account of said failure, forfeited to the estate of R. K. McGinnis the sum of $500.00 and

"Whereas said property was later sold at public auction and bid in by first party for the sum of $7,000.00 and

"Whereas first party is now unable to pay for said property according to terms of said sale and second party desiring to assist first party in paying same and fully protect himself in so doing; it is

therefore agreed by and between the said parties that second party will furnish $5,500.00, the estimated sum necessary to pay off all indebtedness against the estate of R. K. McGinnis, deceased, and to pay his son, Walter McGinnis, his one-half (½) interest in said property after the indebtedness has been paid and in consideration thereof, first party agrees to deed to second party by general warranty deed, the full fee simple title to said property without any limitation or restrictions whatever in said deed.

"As a further consideration of first party making said deed, second party agrees to take possession of said property and to hold and rent the same to the best possible advantage according to his judgment and to sell and dispose of the same to the best advantage of all parties concerned and to the best of his judgment.

"It is agreed that if it requires more than $5,500.00 to pay off all indebtedness against R. K. McGinnis estate and to pay Walter McGinnis his part that each party will furnish the same in the following proportion. The first party 4-15 and the second party 11-15. It is further agreed that while said property is held and owned by the second party that 4-15 of the rent received from the rental of the same shall be paid to the first party and 11-15 to the second party and that first party is to contribute 4-15 to the upkeep, repairs, taxes, insurance and all costs of keeping said property in proper condition for rental to the best advantage, including necessary improvements that at the discretion of second party is thought necessary to be placed on said property and that second party shall receive 11-15 of all the rentals and pay 11-15 of said expenses.

"It is further agreed that when said property shall have been sold that the second party is to be paid the sum of $5,500.00 plus any other money he may be required to furnish under this contract to pay off the indebtedness against said property and to Walter McGinnis for his interest and for improvements that he may make on said property, not in the way of repairs, but for the betterment and without interest, he being given the rental in lieu of interest.

"And the difference in said sum paid to second party as agreed and the selling price of said property shall be paid to first party up to the selling price of $7,500.00 and should said property bring more than $7,500.00, the excess above said sum shall be equally divided between the said parties.

"It is distinctly understood that nothing herein shall give first party any interest in said property, or control over the same and the second party shall, at all times, have full control and management of said property with a full and free right to sell and dispose of same as he thinks best or desires.

"Witness our hands this January —, 1923."
On January 29, 1923, Mrs. McGinnis, in consideration of "one dollar and other good and valuable considerations," conveyed the property to Judge Wade. After that a claim for rent against a tenant, who had been occupying the property, was compromised, and he agreed to give possession on June 1, 1923. Judge Wade then converted the property into a garage and rented it for $125 a month. There had been considerable friction between Mrs. McGinnis and Judge Wade as to the division of the rents, and the sale of the property, and on April 4, 1923, Judge Wade wrote her as follows:

"If you can find any person who will take this property over at any price you say, I will make a deed to it on condition that I get my money that I put into it as above out of it. Now is your opportunity, if you think you can sell this property so as to make something out of it.—I do not want the property and have never wanted it, and I did not aim to keep it very long. Now if you think it can be sold for $9,000.00 or $10,000.00, sell it, and I will take out what I have put into it and let you have the balance, but do not write me until you have sold it."

On July 12, 1923, they, for the purpose of adjusting their differences as to the rent, entered into a contract by which he agreed to pay her $25 a month so long as the property was renting for $125 a month, with the understanding that she was not to be chargeable with taxes, insurance, or repairs on the building.

In the month of March, 1930, Mrs. McGinnis

brought this action against Judge Wade to have the deed to the property adjudged a mortgage, and for a settlement of all matters between them. Judge Wade filed an answer denying the material allegations of the petition, and alleging that he and Mrs. McGinnis jointly owned the property, that he invested therein $7,236.65 and asking the court to determine his interest therein, and that he be allowed to pay plaintiff her interest and take title to the property, and that the contract beween them be terminated. On final hearing the chancellor adjudged the deed to be a mortgage, and after fixing the value of the property at $7,500, and stating the account between the parties, gave Judge Wade a judgment against Mrs. McGinnis for $3,456.41 with a lien on the property to secure the same, but provided that, as between him and Mrs. McGinnis, Judge Wade should discharge a $4,500 mortgage on the property held by William Walters, from whom Judge Wade procured the money to pay in part the indebtedness against the testator's estate, and to pay for the interest of his son, Walter McGinnis.

Whatever may be the views of other courts, the law on the subject in this state is well settled. In brief, it is as follows: A deed absolute on its face may be shown by parol or other testimony to have been intended as a mortgage, without an allegation of fraud, accident, or mistake. Henderson v. Adams, 182 Ky. 280, 206 S. W. 461. Regardless of the form the transaction takes, the courts will consider all the facts and circumstances, and if it appears that the conveyance was intended as a security for a debt theretofore created, or created at the time, or thereafter to be created, it will be adjudged a mortgage. Not only so, but the rights and remedies of the parties must be mutual; that is, if the grantor may treat the conveyance as a mortgage, the grantee may recover his debt and enforce his mortgage lien. Miracle v. Stone, 190 Ky. 610, 227 S. W. 1011.

Among the elements operating on the mind of the chancellor was Judge Wade's letter to the effect that he would make a deed to the property on condition that he would get the money that he put into it, and that he did not want the property, and never had wanted it, and did not aim to keep it very long. The record discloses that the relations between Judge Wade and Mrs. McGinnis were by no means cordial, and that to say the least she was constantly making demands of him and

subjecting him to caustic criticism. In the circumstances he wrote the letter referred to. It in no way elucidates or contradicts the contract between the parties. It simply represents a desire to avoid further friction, and a willingness to forego his rights in the interest of peace, if Mrs. McGinnis could dispose of the property at a certain price, and return him his money. In short, it was an attempted adjustment or compromise, and cannot be construed as throwing any light on the real contract between the parties.

Another element regarded by the chancellor as of controlling weight is the provision of the contract to the effect that Mrs. McGinnis was unable to pay for the property, and that Judge Wade desired to assist her in paying same and fully protect himself in so doing; and the further provision that when the property was sold he was to be paid the sum of $5,500, plus any other money that he might be required to furnish under the contract to pay off the indebtedness against the property and to Walter McGinnis for his interest and other improvements that he might make on the property, "he being given the rental in lieu of interest." Notwithstanding the expression of his desire to assist Mrs. McGinnis in paying for the property, it must not be overlooked that the contract itself points out the precise method by which this assistance was to be rendered, and is not susceptible of the construction that the money advanced for that purpose was a loan which Mrs. McGinnis herself was under the obligation to repay. Not only so, but the provision for the repayment of the sums advanced by Judge Wade plainly contemplated that such repayment should be made out of the proceeds of the property when sold, and not that Mrs. McGinnis was to be personally bound for such repayment. As the contract provided for the repayment of the sums advanced when the property was sold, the mere fact that Judge Wade was to receive rent in lieu of interest did not of itself, or in connection with anything else, tend to show that the conveyance was intended as a security for a debt. Indeed, as Mrs. McGinnis did not obligate herself, either expressly or impliedly, to repay the money advanced, it is clear that the relation of debtor and creditor did not exist, and that Judge Wade could not have recovered a judgment against her and have enforced a lien on the property. On the contrary, the case in its final

analysis is simply one where the parties put their engagement in writing, and all the negotiations leading up to its execution, as well as the writing itself, show that Judge Wade was to take the title, manage and improve the property, distribute the rents on a certain basis, and sell the property; that out of the proceeds he should be repaid the amount advanced without interest; that Mrs. McGinnis should receive the difference between that amount and the sale price of the property up to $7,500; and that any excess over $7,500 should be divided equally between them. It follows that the chancellor erred in adjudging the conveyance a mortgage, and ordering a settlement on that basis.

In view of the depression it may not be to the best interests of either party to adjust their rights at this time, and we therefore refrain from directing a judgment. If, however, a settlement be demanded, it will be made in conformity to the contract, and not on the theory that the conveyance is a mortgage.

Judgment reversed, and cause remanded for proceedings not inconsistent with this opinion.