## CHINN v. LLANGOLLEN STABLES, Inc.

### No. 909.

District Court, E. D. Kentucky.

Nov. 19, 1938.

Leslie W. Morris and Allen Prewitt, both of Frankfort, Ky., for plaintiff.

Gayle A. Mohney and Stoll, Muir, Townsend & Park, all of Lexington, Ky., for defendant.

FORD, District Judge.

Prior to the events which gave rise to this litigation, the plaintiff Mrs. Elsie F. Chinn held the legal title to 278.7 acres of land situated about five miles from the city of Lexington in Fayette County, Kentucky, on the East side of the Maysville Road. Her husband, Phil T. Chinn, for a number of years had been engaged in handling and dealing in thoroughbred horses. His enterprise was carried on by "Himyar Stud," a corporation in which he and Mrs. Chinn held practically all of the capital stock. Except the dwelling house and yard, which was occupied by the Chinn family as their home, the entire farm was used by the corporation as an establishment for the breeding and handling of race horses, for which it was well improved and equipped.

On the 21st day of April 1933, in consideration of $30,000 paid to her in cash, the plaintiff and her husband executed and delivered to the defendant "Llangollen Stables", a corporation owned entirely by John Hay Whitney, of New York, a deed of conveyance for Mrs. Chinn's equity in the land referred to, the title being taken by the grantee subject to mortgages and other subsisting liens standing against it aggregating approximately $48,000. The deed is absolute upon its face and contains the following covenant of title: "The said Grantors do hereby release and relinquish unto the said Grantee, its successors and assigns, all of their right, title and interest in and to said real estate, including dower and homestead, and all other exemptions allowed by law, and hereby covenant to and with the said Grantee, its successors and assigns, that they are lawfully seized in fee simple of said property and have good and perfect right to sell and convey the same as herein and hereby done, that the title to said property is clear, perfect and unencumbered, except for the liens of said two mortgages hereinabove referred to, and said Grantors hereby warrant generally the title to said property."

Contemporaneous with the conveyance and as a part of the consideration of the transaction two separate writings were executed, by one of which the defendant granted to the plaintiff an option to repurchase the land at any time after four years and prior to five years at its fair market value to be determined by an appraisement to be made at the time of the exercise of the option; and by the other, it leased to her the dwelling house and appurtenances for the period of the option at a rental of One hundred dollars per year payable annually in advance with the provision that at the expiration of the term she would vacate and surrender peaceable possession of the premises without demand or notice.

On August 16, 1937, the plaintiff filed this action in the Fayette Circuit Court seeking to have the writings executed on April 21, 1933, adjudged effective only as a mortgage upon her land to secure indebtedness; that she be adjudged the owner of the land and that she recover from the defendant the reasonable rental thereof to be credited on her mortgage indebtedness. By appropriate procedure, the case was removed to this Court. By an amendment filed in this Court, the plaintiff prays that in the event it should be determined by the Court that the instrument referred to does not constitute a mortgage, the Court adjudge a rescission of the entire transaction upon such conditions as may be equitable and for an accounting between the parties. By answer, the defendant put in issue all of the material allegations of the plaintiff's petition as amended and by counter-claim it seeks a declaration of rights as between the plaintiff and defendant under the lease.

In the determination of the questions involved, we apply the law of the State as declared in the decisions of its highest court. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. The Kentucky Court of Appeals has considered many cases involving the same question and the law on the subject in Kentucky seems to be thoroughly established. In the case of Wade v. McGinnis, 247 Ky. 261, 265, 56 S.W.2d 1000, 1002, the Court said: "Whatever may be the views of other courts, the law on the subject in this state is well settled. In brief, it is as follows: A deed absolute on its face may be shown by parol or other testimony to have been intended as a mortgage, without an allegation of fraud, accident, or mistake. Henderson v. Adams, 182 Ky. 280, 206 S.W. 461. Regardless of the form the transaction takes, the courts will consider all the facts and circumstances, and if it appears that the conveyance was intended as a security for a debt theretofore created, or created at the time, or thereafter to be created, it will be adjudged a mortgage. Not only so, but the rights and remedies of

the parties must be mutual; that is, if the grantor may treat the conveyance as a mortgage, the grantee may recover his debt and enforce his mortgage lien. Miracle v. Stone, 190 Ky. 610, 227 S.W. 1011."

In the case of Lunsford v. Colwell, 199 Ky. 326, 329, 250 S.W. 993, 995, it is said: "Mortgages and conditional sales are both valid, and it is often a matter of great difficulty to determine to which class a particular instrument belongs. The only way of solving the question is to find out what the parties intended. In ascertaining their intention the courts will be guided more by the substance than the form of the transaction, and in doubtful cases will always construe the contract to be a mortgage, as such construction will be more apt to prevent fraud and oppression. Edrington v. Harper, 3 J. J. Marsh. 353, 20 Am.Dec. 145; Skinner v. Miller, 5 Litt. 86. The test in every case is: Was the instrument intended as a security for the loan of money or other property? If so, it is a mortgage. Skinner v. Miller, supra. When such appears to be the nature of the transaction, it is immaterial that the lender repeatedly stated that he would not take a mortgage, or adopted other means to conceal the truth."

■ In the case of Gish v. Terrell, 266 Ky. 424, 427, 99 S.W.2d 168, 170, the Court said: "In Oberdorfer v. White, 78 S.W. 436, 437, 25 Ky.Law Rep. 1629, we wrote:

" 'The presumption, of course, arises that the instrument is what it purports on its face to be—an absolute conveyance of the land. To overcome this presumption, and to establish its character as a mortgage, the cases agree that the evidence must be clear, unequivocal, and convincing.' To same effect is Runyon's Adm'r v. Pogue, 42 S.W. 910, 19 Ky.Law Rep. 940, and 41 C.J. p. 356, § 124, and notes on pp. 357 and 359."

■ The evidence shows that Phil T. Chinn and his corporation, Himyar Stud, became seriously involved in financial difficulties as a result of which Mr. Chinn went into bankruptcy and the corporation into receivership. The receiver of the corporation and certain of its creditors instituted proceedings seeking to subject the land held by Mrs. Chinn to the debts of the corporation upon the ground that the land was purchased and improved with funds of the corporation, and that the corporation was the beneficial owner. The Court caused the land to be appraised by disin-terested parties, who fixed its market value at $76,200. Thereafter, Mrs. Chinn filed in the proceedings a writing in which she stated: "That in her opinion the land appraised under the orders of this Court, if sold, would not bring as much as the appraisement made." Obviously, under the appraisement, which was concurred in by the plaintiff, her equity in the land was less than $30,000 in view of the outstanding liens upon it. She offered to relinquish her equity to a certain portion of the land and made other proposals looking toward an adjustment with the creditors.

Major L. A. Beard, one of the directors of Llangollen Stables, Inc., was in charge of certain properties of the corporation on a farm in the vicinity of the Chinn farm. Mr. Chinn approached him on several occasions in an effort to have him procure a loan from Mr. Whitney for $20,000 to be secured by a second mortgage on the Chinn farm. The proposal was communicated to Mr. Whitney and he declined it. Then Mr. Chinn sought, through Major Beard, to interest Mr. Whitney in renting the farm for a term of years, with the rent to be paid in advance so as to be immediately available for adjustment of the claims of creditors. The evidence is convincing that Mr. Whitney declined all such propositions and refused to either lend money or enter into a rental arrangement. After these efforts proved fruitless, on February 15, 1933, Mr. and Mrs. Chinn joined with the creditors of the corporation in a communication addressed to Mr. Joseph E. Harting, Receiver of Himyar Stud, requesting that he endeavor to secure a purchaser for Mrs. Chinn's land upon such terms as would make $30,000 available for distribution to the creditors of Himyar Stud, and agreeing that if he succeeded in finding such a purchaser upon terms agreeable to Mr. and Mrs. Chinn, they would execute a general warranty deed for the land and the creditors of Himyar Stud would dismiss their claims against it.

The record does not disclose what efforts, if any, the Receiver made to secure a purchaser, but it is disclosed that about a month later at the suggestion of one of the attorneys for the receiver a written proposal was made by Mr. and Mrs. Chinn to Mr. Whitney by which they offered to sell him Mrs. Chinn's equity for a cash payment of $30,000 providing that he take the land subject to the liens standing against it approximating $48,000, and grant to them an option for repurchase at fair market

value after four years and within five years with a lease under which they would occupy the residence during the period of the option. This proposal resulted in the consummation of the deal. The $30,000 was paid to Mr. and Mrs. Chinn and the land conveyed to Mr. Whitney's corporation subject to the outstanding encumbrances and with the collateral agreements referred to.

At the time of the transaction, no indebtedness was contemplated by the parties and none was ever created or intended to be created. Weighing all the evidence in the light of the conduct of the parties and the attendant circumstances, it falls far short of showing that the writings, regardless of their form, were intended to secure a loan. The plaintiff's contention that the form of the writings was a mere device to cover up an undisclosed transaction of an entirely different nature is not supported by the preponderance of the evidence.

The plaintiff having failed to show that the deed referred to was intended as a mortgage or security for indebtedness, it follows that she is not entitled to the relief sought. Having failed to exercise her option within the time prescribed and the term of her lease having expired, the plaintiff has no right, title or interest in the property which she sold and conveyed to the defendant. The defendant is entitled to its possession.

Let findings of fact and conclusions of law be submitted together with a decree in conformity herewith.