## CHINN v. LLANGOLLEN STABLE, Inc.
### No. 8255.

Circuit Court of Appeals, Sixth Circuit.
Jan. 16, 1940.

Leslie W. Morris and Allen Prewitt, both of Frankfort, Ky., for appellant.

James Park, of Lexington, Ky. (Gayle A. Mohney and Stoll, Muir, Townsend & Park, all of Lexington, Ky., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

The appeal is from a decree denying relief to the appellant in an action seeking to have writings consisting of her deed to real estate in Kentucky, and an option to her to repurchase, adjudged effective only as a mortgage to secure indebtedness. The petition prayed in the alternative that, in the event it was determined that the instruments did not constitute a mortgage, the court adjudge rescission and grant her an accounting.

In 1933 the appellant held the legal title to two tracts of land containing 278 acres, near the city of Lexington. Upon this property her husband, Phil T. Chinn, was engaged in the business of raising and selling thoroughbred horses through a corporation styled Himyar Stud, the capital stock of which was nearly all held by him and the appellant. The entire farm was used by the corporation except the dwelling occupied by the Chinn family.

In December, 1930, Chinn and his corporation became financially involved, the former being later adjudicated a bankrupt, and the latter being placed in receivership. On February 2, 1932, the receiver filed a cross-bill against the directors of the corporation, including the appellant, seeking recovery of large sums alleged to have been diverted from corporation funds to purchase and maintain the property here involved, and asserting the corporation to be its beneficial owner. The court caused the land to be appraised by disinterested parties, who fixed its then market value at $76,200. Certain creditors of the corporation including Chinn, filed an intervening petition with allegations substantially the same as in the receiver's cross-bill. On October 28, 1932, the appellant filed her answer admitting that certain of the lands had been paid for by the funds of the corporation, and offering to relinquish all claim thereto upon payment of the lien indebtedness against it, and, the next day, filed an offer of settlement in which it was stated that the land had been appraised by disinterested appraisers in the sum of $76,200, but that, in her opinion, if it were sold under orders of the court it would not bring as much as the appraisal. She offered to pay to the receiver $10,000 to be distributed among those creditors who had not already assigned their claims to Chinn, the latter having obtained assignments of 60% of the outstanding claims.

Llangollen Stables, Inc., operates a stud farm in the neighborhood of the Chinn property. It is controlled by the Whitney interests in New York whose farm manager in Kentucky is Major Beard. In July, 1932, Chinn approached Beard to ascertain if J. H. Whitney would loan him $20,000 to be secured by a mortgage on the farm. Whitney was not interested. Later, Chinn requested Beard to see if Whitney would consider renting the Chinn farm for a pe-

riod of years. Since Chinn's proposal involved a rental of $10,000 per year, to be paid for four or five years in advance so as to satisfy creditors, and since title to the property was involved, with foreclosure threatening, it was not considered. Subsequently, protesting creditors advised the receiver that if a purchaser could be found who would pay $30,000 for the property, they would agree to dismiss their cross-bill. The Chinns approved the proposal in writing and agreed to execute a deed "to such purchaser as the receiver may secure as hereinbefore set out." Counsel for the receiver conveyed the proposition to Whitney, but nothing came of it.

The foregoing sketches briefly the situation as it existed up to March. 14, 1933, when the Chinns addressed a proposal to Whitney "withdrawing all propositions heretofore made," and offering to sell their property, subject to encumbrances then aggregating $50,000 for $30,000, with the proviso that they were to have an option to repurchase, exercisable at the end of four and prior to five years, at a price to be determined by an appraisal to be made at the time of the exercise of the option, the price less the liens to be paid in cash, with a reservation that the residence be occupied by them until the expiration of the option period, without rent. The proposal was accepted and the transaction consummated on April 21, 1933, in accordance with its terms, save that the option ran to the appellant who was given a lease for the dwelling at an agreed rental of $100 per year.

The appellee went into possession, made repairs and improvements, paid the taxes, carried and paid for insurance, and paid interest and principal on the lien indebtedness, all without protest or exception on the part of the appellant. Four years later, on April 23, 1937, and after the time for the exercise of the option had begun to run, she addressed a letter to the appellee asserting, for the first time, that the transaction was, in substance, a lending and borrowing with a mortgage as security, and that she had been so advised by counsel. She stated therein that she was ready and willing to adjust all accounts on that basis, but that if it should not either amicably or judicially be determined that such was the legal effect of the transaction, she desired to exercise her option strictly in accord with its terms, and designated a time for the closing of title. On May 27, in accord with the terms of the option instrument, the appellee requested Chinn and other appraisers named therein to make appraisal. Chinn failed to appear and an independent appraisal as provided was made, the value of the property being determined at $500 per acre. A deed was prepared and tender sought to be made but no one appeared to receive it at the appointed time and place. On August 16, 1937, the appellant began her action. At the date of the decree the repurchase option had expired without being exercised.

Under the law of Kentucky, a deed, absolute on its face, may be shown by parol or other testimony, to have been intended as a mortgage without an allegation of fraud, accident or mistake. Henderson v. Adams, 182 Ky. 280, 206 S.W. 461; Wade v. McGinnis, 247 Ky. 261, 265, 56 S.W.2d 1000. While it is often a matter of difficulty to determine whether a transaction is a mortgage or a sale, the only way of solving the question is to find out what the parties intended, and in ascertaining this intention the courts will be guided more by substance than form, and in doubtful cases, will construe the contract to be a mortgage. Lunsford v. Colwell, 199 Ky. 326, 329, 250 S.W. 993. There is, however, an initial presumption that an absolute conveyance of land is what it purports to be, and to overcome this presumption and establish its character as a mortgage the evidence must be clear, unequivocal and convincing. Gish v. Terrell, 266 Ky. 424, 427, 99 S.W.2d 168. Although the appellant pays deference to the rule that the objective of the parties is controlling and that their intent governs, meaning thereby, not the intent to give a deed, but an intent that it shall operate merely for security, yet the case is argued as though a chain of facts which, beginning with the application by a necessitous debtor for a loan, results in the execution of a deed to real estate, with an option to repurchase, necessarily requires that the transaction be adjudged a borrowing and lending and not a sale. Out of this concatenation of circumstances, it is urged, a mortgage results, regardless of extrinsic circumstances. If this is so, there may never be a valid sale by a distressed debtor in Kentucky if accompanied by a contract to repurchase. But this is not the test of a loan under the law of Kentucky, Charles v. Thacker, 167 Ky. 835, 181 S.W. 611; nor under general law, Wallace v. Johnsone, 129 U.S. 58, 9 S.Ct. 243, 32 L.Ed. 619. The criterion is the intention of the

parties in the light of attendant circumstances.

■ So tested the court below found the transaction to be in substance what in form it purported to be, a sale of an equitable interest in property and not a deed given as security for a loan subject to defeasance upon repayment. A review of the evidence discloses no error in the court's findings of fact and none in its ultimate conclusion.

Neither Whitney nor the appellee was a lender of money. The appellant, whatever her necessities, owed nothing to the appellee and there is absent any indicia that a debt was sought to be created by the transaction. On the theory of mortgage, there was wanting any evidence of mutuality since there was no covenant, express or to be implied, by which the appellee could compel repayment of the purchase price. The transaction, as finally consummated, had its inception not in a proposal by the appellant to the appellee, but to the receiver that he find a buyer on terms not less favorable than those later submitted to the appellee, and the transaction, as finally concluded, was, in substance, with the receiver, since the money was paid to him to be disbursed to creditors.

Circumstances that often lead to adjudication of deeds as mortgages are absent in the present transaction. It is unusual for one intending to create a lien on his property to agree to pay rent and to give possession, or for a money lender to agree to pay taxes and insurance upon the property. Young v. McCraw's Adm'x, 269 Ky. 736, 108 S.W.2d 712. The consideration was not unconscionable or inadequate. The property was appraised at $76,200 by disinterested appraisers appointed by the Court, and was subject to liens of approximately $48,000. The appellant represented to the Court that, in her opinion, the land would not sell at forced sale for a sum equal to its appraised value. The court below found that her equity in the land was less than $30,000 in view of the outstanding liens, upon substantial and persuasive evidence. Under familiar rules its judgment, after seeing the witnesses and hearing their evidence, is not to be disturbed except for clear mistake. Adequacy of consideration must be tested by conditions at the time of the transaction, Dunaway v. Puryear, 6 Cir., 276 F. 209, and not retrospectively. There is inherent unreasonableness in assuming that one would

lend upon property a sum which, in view of prior liens, would exhaust the value of the equity leaving no margin of safety to abide future market fluctuations.

To these considerations must be added the fact that there was no stated repurchase price, and that the exercise of the option would require that a price be ascertained by appraisal. Conceivably, in the situation that existed in April, 1933, viewed prospectively the value of farm lands might become still further depressed, in which case the option to repurchase at an appraised value would be more advantageous to a vendor desirous of recovering her property than the payment of a fixed mortgage debt, and a desire to recover the property is as consistent with an option to repurchase as it is with an intention to create a lien. Finally, there is the practical construction placed upon the transaction by the parties themselves. For four years the appellee paid interest, taxes and insurance, expended over $15,000 for improvements and repairs, including repairs to the Chinn homestead, without demur by the appellant, while she paid her agreed rent. It was not until the time for exercising the option had arrived, that the appellant first raised the question as to the legal consequences of the instruments being other than what their form would indicate. We are not persuaded of error in the adjudication and,

The decree is affirmed.