## Clolinger, et al. v. Callahan, et al.

(Decided June 24, 1924.)

### Appeal from Harlan Circuit Court.

1. Continuance—Trial—Refusal of Continuance and Trial in Absence of Defendants in Prison Justified.—Where issues had been made up for some time before trial, and no effort had been made to

secure attendance or depositions of defendants who were in prison, they cannot complain of court's refusal at trial to order their attendance or grant continuance for taking of depositions.

2. Death—Evidence Held to Prima Facie Rebut Theory of Self-Defense.—In action for death by wrongful shooting under Ky. Stats., section 4, evidence held to prima facie rebut any theory of self-defense.

3. Death—Plaintiff Need Not Negative Self-Defense.—In action for death by wrongful shooting under Ky. Stats., section 4, burden is not on plaintiff to negative self-defense.

4. Death—Instruction on Law of Self-Defense Held Properly Refused.—In action for death by wrongful shooting under Ky. Stats., section 4, court properly refused to instruct on self-defense where there were eye-witnesses after shooting began, though not at the beginning; it appearing that deceased was unarmed and retreating.

5. Attachment—Technical Requisites Strictly Construed.—Attachments are summary proceedings, and harsh in their operation, and their technical requisites are strictly construed.

6. Attachment—Grounds for Not Jurisdictional.—Grounds for attachment provided by statute are not jurisdictional, and an immaterial omission may be supplied if its meaning is clearly implied from context, unless a material word is omitted, and no other similar language is used, in which case omission is fatal.

7. Attachment—Affidavit for Attachment Held Sufficient though Word Omitted—"Cheat."—Affidavit for attachment that "defendants . . . have sold, conveyed, or otherwise disposed of their property with the fraudulent to cheat, hinder, and delay their creditors," held sufficient though the word "intent" was omitted, since no one could "cheat" his creditors without "fraudulent intent."

8. Homestead—Not Abandoned by Confinement in Penitentiary.—Homestead right was not abandoned by enforced confinement in penitentiary.

9. Homestead—One has Right to Sell and Reinvest.—One may sell his homestead and reinvest proceeds in another without affecting its immunity from seizure.

10. Continuance—Defendant Setting up Homestead Right Not Controverted Prior to Trial should have been Given Opportunity to be Heard.—Where defendant confined in prison claimed as against attachment that funds in bank were proceeds of homestead and intended for reinvestment in homestead, and this was not controverted until time of trial, defendant was not in fault in failing to give his deposition or to enter a motion for an order for his return to testify on that point, and court erred in not giving him an opportunity to be heard.

11. Evidence—Testimony as to What Son who Acted as Father's Agent Told Witness as to Sale of Homestead Held Not Admissible on Issue of Exemption of Moneys in Bank.—Where issue was

whether homestead exemption covered moneys in bank, it was competent to show sale of homestead by defendant's son, and any conversation of son at time of sale, if acting as father's agent, but it was not competent for witness not purchaser to testify as to what the son told him in reference to the sale.

HALL, JONES & LEE for appellants.

CLAY & CARTER for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Thomas Clolinger and his son, Harmon, were indicted, charged with the murder of John Callahan and convicted and sent to the penitentiary. On December 4, 1920, the children of the deceased Callahan sued them under the provisions of section 4, Ky. Statutes, and procured an order of attachment. The First National Bank of Harlan was summoned as garnishee and the attachment was levied on certain lands belonging to Thomas Clolinger.

At the January term, motions were entered and orders made, and an amended petition and answer were filed. The first paragraph of the latter was a traverse; the second pleaded that Thomas and Harmon Clolinger were *bona fide* householders with a family, resident in this Commonwealth; that the funds to the credit of Thomas Clolinger in the bank and garnisheed in this action were the proceeds of his homestead which he had sold, with the expectation and intention of investing the same in another homestead, and claiming his exemptions therein.

No further action was taken until the 18th of July, 1922, at which time a reply was filed traversing the affirmative matter in the answer, and the case was called for trial. Thomas Clolinger was then in the penitentiary, but his attorney filed an affidavit and asked an order of court for the attendance of Clolinger to testify in person or that the case be continued until his deposition could be taken. This was overruled. A jury trial was had in which a verdict was rendered in favor of plaintiffs for $5,000.00 against Thomas Clolinger.

Turning to the other branch of the case. Thomas Clolinger executed and delivered a check to W. F. Hall for $1,000.00 and to F. F. Cawood for $530.00, both being drawn on the above named bank.

On the 16th day of December, 1920, the holders presented these checks to the bank and demanded payment. At that time Clolinger had $2,000.00 on deposit in the bank, but payment was refused for the reason that the bank was holding the funds as garnishee under the order of attachment.

On the 5th day of January defendant's counsel, in open court moved to discharge the attachment upon the face of the papers and on the 7th day of January plaintiffs filed an amended petition, amending the grounds of attachment. The garnishee bank filed answer, stating that Thomas Clolinger had the sum of $2,000.00 on deposit with it; that Hall and Cawood had demanded payment of it on checks for $1,000.00 and $530.00, and that it had refused to pay same by reason of the order of garnishment.

The court heard the evidence as to the grounds of attachment and sustained same. It appeared that the defendant had sold $2,000.00 worth of real estate and deposited the proceeds in the First State Bank and had from $2,500.00 to $3,000.00 worth of real estate remaining. After the order sustaining the attachment was made Hall and Cawood offered to file intervening petitions, setting up their claim in the checks. This was refused as coming too late. All defendants appeal.

It is conceded that the issues as to the principal action, had been made up for some time before trial, and no effort had been made to secure the attendance or the depositions of the defendants, hence they cannot now complain of the court's action of forcing a trial in their absence.

It is urged that a peremptory instruction should have been given for defendants, and the instructions given are criticised.

The only eye-witnesses were some little boys who had seen deceased at work setting up a wagon a few minutes before the difficulty occurred, but at the time it begun they were playing behind a shed some twenty-five or thirty yards away. Their attention was attracted by a pistol shot, and they ran around immediately and saw the deceased near the wagon, retreating, with his open hands in front of his face as if used for a shield. The defendant was following deceased, discharging a pistol as he advanced and continuing to do so until the deceased fell. No pistol or other weapon was found near the deceased or at the place where he had been at work,

and there is evidence showing that defendant was intoxicated.

Section 4, Kentucky Statutes, provides: "The widow and minor child or either or both of them, of a person killed by the careless, wanton or' malicious use of fire-arms  . . .  not in self-defense, may have an action against the person who committed the killing and all others aiding or promoting.  . . .  "

It is argued that the statute places upon the plaintiff the burden of negativing self-defense upon the part of the defendants; that the beginning of the difficulty is not shown, therefore the defendant could have acted in self-defense and a peremptory instruction should have been given.   If the statute should be so construed it may be said that the plaintiffs' evidence meets the requirements.   It shows that the deceased was engaged at work and had no weapon of any sort; that defendant was intoxicated and while in that condition went to deceased's place of work; everything indicates he did all the shooting; it does not appear there was any provocation therefor, and it clearly appears that he thereafter pursued and continued to shoot at his defenseless victim until he dropped.   Certainly this *prima facie* rebuts any theory of self-defense.

While the question may be disposed of in this way it is not amiss to ask, does the statute place the burden of proof in that respect upon the plaintiff or does the language used simply emphasize the right of a plea of self-defense based upon the evidence?

Similar language is used in section 1242, Ky. Statutes, denouncing the offense of shooting or stabbing another in sudden affray.   Upon a trial for that offense the first instruction always follows the language of the statute, and embraces the words, "not in his self-defense," and the same words are sometimes used in manslaughter instructions, but it has never been held that this placed the burden upon the Commonwealth of so negativing the plea of self-defense. On the contrary, such plea is a defense that must be developed by the evidence, and in the absence of such evidence an affirmative instruction upon it is, as a general rule, improper, and our conclusion is that this statute should be given a similar construction.

The above reasoning applies with equal force to the instructions given.   The court instructed the jury in the language of the statute and gave the converse.   The de-

fendants offered a properly worded self-defense instruction, which was refused.

There was no evidence whatever upon which to base the refused instruction; but it is argued that it is the rule in criminal cases, where there are no eye-witnesses to the homicide and the evidence is purely circumstantial, for the court to instruct upon every theory of the case, including the law of self-defense, unless the physical facts are such as to preclude the idea of a struggle or of resistance upon the part of deceased.

It is unnecessary to determine whether a distinction may be drawn between the civil and criminal practice, as there were eye-witnesses in this case and other facts illustrating the rencounter. It follows that the refusal of the court to give the offered instruction was not error.

As to the matter of attachment, the ground as laid in the original petition was, "the defendants   .   .   . have sold, conveyed or otherwise disposed of their property with the fraudulent to cheat, hinder and delay their creditors." It will be observed that the word "intent" is omitted. In the amended petition filed on January 7th, this was supplied, but in the meantime, on December 16, 1920, Hall and Cawood presented their checks to the bank for payment, and on January 5th there was a motion to dissolve the attachment on the face of the papers, so that the first question is, was the original order of attachment valid? And if not, what rights, if any, did Hall and Cawood acquire?

Attachments are summary proceedings and harsh in their operation and for this reason their technical requisites are strictly construed. The legislature has provided the grounds upon which they may issue. Yet such grounds are not jurisdictional, and an immaterial omission may be supplied, if its meaning is clearly implied from the context. (Clark v. Miller, 88 Ky. 108.) This does not apply to material words, though as to these, if similar language, or words conveying the same meaning are used, this will be sufficient (Cabell, Bayse Co. v. Patterson, 98 Ky. 520), but where a material word is omitted and no other similar language is used the omission is fatal. This has been applied to the omission of the word "just." Taylor v. Smith, 56 Ky. 536; Worthington v. Cary, 58 Ky. 470; Allen v. Brown, 61 Ky. 342; Bailey v. Beadles, 70 Ky. 383; Moore v. Harrod, 101 Ky. 248. To a failure to state the amount affiant believes he ought to recover. Sowherd v. Harding, 7 Law Reporter 217;

Moore v. Harrod, *supra.* To the failure of an attorney in making an affidavit to state that plaintiff is absent from the county.    Pool v. Webster, 3 Met. 278.

The adjective "fraudulent" implies a noun to follow, and the natural inference is that this word was omitted by mistake, and we can conceive of no other following word except "purpose" or "intent" or some word of similar meaning; but as the word "intent" is material, it may not be supplied unless there are other words used conveying the same meaning.    However, these appear in the concluding sentence, "to cheat, hinder and delay their creditors."

The word "cheat" means to "deceive, esp. so as to defraud, trick, swindle."    Webster's New International Dictionary.

It is really difficult to perceive what a debtor could do to "cheat" his creditors that was not done with a "fraudulent intent," and when the quoted phrase is joined to the words "with fraudulent" no other meaning can be attached to such language but that the sale was made with fraudulent "intent."    We conclude that the affidavit was sufficient.

If defendant had acquired a homestead right before the sale it was not abandoned by his enforced confinement in the penitentiary.    Also, if acquired he had the right to sell his homestead and reinvest the proceeds in another.    This issue had been tendered for over a year and not controverted until the time of trial, consequently the defendant was not in fault in failing to give his deposition or to enter a motion for an order for his return to testify on this point.

Under the circumstances he should have been given an opportunity to be heard on that question, either in person or by deposition.

On the question of attachment a stipulation was filed to the effect that in December, 1920, Thomas Clolinger conveyed a tract of land to Frank Farmer, and it was shown that he had $2,000.00 on deposit in the Farmers' Bank, the proceeds of the sale of that land.

One witness, not the purchaser, testified as to Harmon Clolinger having sold this land for his father, and over the objection of defendant, was permitted to testify as to what Harmon Clolinger told him in reference thereto.

While it was competent to show the sale and any conversation of Harmon Clolinger at the time of the sale,

if acting as his father's agent, yet Harmon's conversation with this witness would not be competent against Thomas Clolinger, as Harmon was not interested in the property at all.

In view of this incompetent testimony and the failure to permit Thomas Clolinger to testify we are unable to tell whether the grounds of attachment should have been sustained. We also think Hall and Cawood should be permitted to file their intervening petitions and all the equities of the case tried out.

Wherefore, judgment is reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.