## Bender v. Kaelin et al.

(Decided Feb. 12, 1935.)

784

W. G. DEARING for appellant.

A. W. DORSEY and FRANK P. HENDERSON for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

In February, 1925, Charles Bender, husband of appellant, was the owner of the property located at 725 South Preston street, Louisville, Ky. The property was under mortgage, and the mortgagee foreclosed his lien and the property was sold pursuant to judgment of the court and bought by Ben Kaelin, one of the appellants herein, for $6,500, and Kaelin received deed therefor in February, 1925. The Benders were in possession of the property at the time of the sale and conveyance to Kaelin, and he allowed them to remain in possession of the property at a rent of $65 per month, until September 14, 1925, when Kaelin sold the property to the appellant, Alice C. Bender, for $7,000. By the terms of the conveyance Mrs. Bender assumed the mortgage for $3,500 held by the Louisville Title Company, representing the sum which Kaelin borrowed of it to pay on the property when he purchased same at the judicial sale; and she paid Kaelin $200 in cash and executed her note for $3,300, and Kaelin retained a lien on the property to secure the note; but this lien was inferior to the one held by the Louisville Title Company mentioned above. Mrs. Bender began to make payments to the Louisville Title Company on its lien and to Kaelin on his note,

which, according to her contention, amounted to approximately $3,000. In November, 1929, the Louisville Title Company was about to foreclose its lien on the property, and, in order to avert the pending foreclosure, Mrs. Bender and the Kaelins entered into a contract on November 9, 1929, whereby Mrs. Bender was to and did sell the property to the Kaelins, and as the consideration for the conveyance the Kaelins were to pay off the claim of the Louisville Title Company, all unpaid taxes and debts against the property, and the Kaelins agreed to hold the property in their own name for a period of two years within which time Mrs. Bender was given the right to repurchase the property for whatever sum Kaelins paid on it, together with 6 per cent. interest. For accuracy and a clear understanding and import of the contract we here copy it in full:

"This agreement made and entered into by and between Alice C. Bender known hereafter as party of the first part and Pauline Kaelin and Ben Kaelin her husband known hereafter as parties of the second part.

"Party of the first part agrees to convey by deed to parties of the second part a piece of property located at 725 South Preston Street (metes and bounds) in consideration of which parties of the second part agree to assume and pay all indebtedness, mortgages, taxes, etc., on said property and parties of the second part also agree to rent said property in their name and will not sell or dispose of same for at least two years from date of this agreement.

"Parties of the second part further agree to lease said property to the party of the first part for a term of 2 years from date of this agreement and party of the first part agrees to pay to the parties of the second part the sum of $10 per week as rent for the term of 2 years and to make necessary repairs for the said term of 2 years.

"Parties of the second part further agree to and do hereby give party of the first part an option and agree to sell said property back to the party of the first part for the same amount as paid or due on said property at time of transfer from

first party to second parties, if party of the first part desires to purchase said property on or before 2 years from date of this agreement. If said property is purchased by party of first part she agrees to pay parties of second part the amount paid by them or amount due on said property at the time of transfer of property to said parties, principal and interest and also interest on the entire indebtedness from date of transfer to second parties until purchased by first party, interest at the rate of 6 per cent. per annum and said rent at $10 per week then is to apply as part payment on said property. During the life of this agreement parties of the second part are to pay all taxes on said property and to be added to the purchase price of said property.

"Witness the signatures of the parties hereto the day and year first written."

Pursuant to the above contract Mrs. Bender sold the property to the Kaelins, the appellees herein, and Kaelins paid the debts against the property, and the Benders remained in possession of the property as a tenant at $10 per week rental as provided by the contract, until evicted therefrom as will hereinafter be shown.

On August 19, 1930, the Kaelins sold the property to one J. J. Brown in exchange for certain other property owned by Brown. The Benders remained in the property for a while after Kaelins had sold it to Brown, and made further payments of rent. They finally stopped paying rents to any one, and in November, 1930, Mrs. Bender brought this suit in the Jefferson circuit court to recover damages against the appellees, Kaelins, for the breach of the contract giving her two years to repurchase the property.

The Kaelins, defendants below, filed answer and counterclaim denying any liability on the alleged breach of the contract and, among other things, pleaded that Mrs. Bender authorized them to sell the property, and that she breached the contract of November 9, 1929, by not paying the rents and failing to make proper repairs as provided in the contract, and because of these facts she was estopped from making any claim against the appellees.

These affirmative pleas were traversed by reply, and after the proof had been taken on the whole case and submitted to the chancellor, he found from the evidence that appellees had failed to sustain their plea that Mrs. Bender authorized Kaelin to sell the property, and further held that the fact that Mrs. Bender failed to pay the rent and make repairs did not give Kaelins the legal right to sell the property. The correctness of the chancellor's finding in these respects is conceded in brief for Kaelins; hence we need not further consider those questions.

Mrs. Bender filed various amended petitions in which she alleged that pursuant to the deed of conveyance by Kaelins to Brown, forcible detainer proceedings were caused to issue against her and as result she was ejected from the property; that at the time the 1929 contract was entered into, and at the time of the breach thereof, she and her husband were engaged in the bakery business in the property in question and as result of their ejectment therefrom she had been damaged in the sum of $3,000 in her business, and asked that she recover of Kaelins this sum in addition to the sum prayed for in her original petition.

It was finally determined by the chancellor that Mrs. Bender could not recover special damages for the alleged loss and damage to her bakery business resulting from her being ejected from the property.

It is insisted that Mrs. Bender should be allowed to recover damages to her business for the alleged unlawful ejectment, and as authority in support of this contention the cases of Roettger v. Riefkin, 130 Ky. 197, 113 S. W. 88; Morrison v. Price, 130 Ky. 139, 112 S. W. 1090, are cited and relied on.

The question of malice is not discussed in the opinion, supra, and we do not know whether or not this question was in issue. But the facts as stated in the opinion seemed to indicate that the parties responsible for the prosecution of the forcible detainer actions did so without probable cause or reasonable grounds, and did not act in good faith.

There is a line of cases which hold that no cause of action for damages will result to one who has been ejected by forcible detainer proceedings when such actions are prosecuted in good faith and for probable cause, although technically unlawful.

In the case of Hegan Mantel Co. v. Cook's Adm'r, 57 S. W. 929, 930, 22 Ky. Law Rep. 427, there was involved a question very similar to the one in the case at bar.

In the case supra, this court said:

"There was no effort in these cases to show that the forcible detainer proceedings were maliciously prosecuted and without probable cause. So the question is whether Jones' denial of the subtenants' right to exercise the option   *   *   *   for five years, and the institution of the proceedings for the possession of the property, entitled the subtenants to recover damages.   *   *   *   If a party believes he is entitled to relief by action in a court of justice, he can go into court and have the question determined without incurring damages. There cannot be a recovery against one for instituting an action or proceeding against another unless it is done maliciously and without probable cause. If the court below be correct in awarding damages by reason of the fact that the lessor instituted forcible detainer proceedings against the subtenants, then landlords would be deterred from ascertaining their rights in courts of justice, for fear that, upon their failure to establish them, they would incur damages.   We think it would be against public policy to establish such a rule, because courts of justice should be open to all persons who desire to have questions as to personal or property rights adjudicated."

There is neither allegation nor proof that Kaelin acted maliciously in procuring or encouraging Brown to institute the forcible detainer action resulting in the ejectment of Mrs. Bender, and in the absence of such allegation or proof no right of recovery could result to Mrs. Bender.

The proof conduces to show that when Kaelin conveyed the property to Brown, Brown was insisting on Kaelin to deliver him possession of the property. It also appears that there was a question or controversy as to whether or not Mrs. Bender was paying the rents according to the contract. The general rule is that when the landlord conveys the property his lessee or tenant then becomes the lessee or tenant of his

vendee. So far as the record discloses, Kaelin and Brown acted in good faith and believed that Brown had the right to eject Mrs. Bender. It is further shown that they had the advice of counsel who represented Brown in the forcible detainer proceedings. Before Mrs. Bender could recover for the alleged unlawful ejectment, it was incumbent upon her to both allege and prove that Kaelin acted maliciously and without probable cause in encouraging and procuring Brown to eject her from the property. Our conclusion is, therefore, that she failed to show any right of recovery on this phase of the case, and the chancellor did not err in so holding.

This leaves for consideration the nature and import of the 1929 contract as to wether it should be given the force of an ordinary option, in the usual meaning and acceptation of that term, or whether, in the circumstances, it should be treated as a mortgage.

The chancellor denied a recovery on all phases of the case, as above indicated, except for the breach of the 1929 contract, and held that the contract was an option to purchase the property, and found that Mrs. Bender was entitled to nominal damages only, and adjudged her a recovery of one cent and the costs of the action relating to the breach of the 1929 contract, and adjudged that Mrs. Bender pay the costs of the other phases of the action which were decided adversely to her. From that judgment, Mrs. Bender appeals on the whole case.

It is insisted for Mrs. Bender that the 1925 transaction should be taken into consideration with the 1929 contract and these transactions treated as one and the same continuing contract, and that the sums of money paid by Mrs. Bender pursuant to the 1925 transaction should be adjusted in this litigation. In this contention we are unable to concur. The 1929 contract makes no reference expressly or impliedly to the 1925 transaction nor the sums paid pursuant to it. The 1929 contract is an independent transaction, and we are unauthorized to inject into it the 1925 contract. The parties made no such provisions for themselves; and the courts are unauthorized to make a contract for parties which they did not make for themselves. However, a consideration of the 1925 contract may be helpful in determining the nature and import or purpose of the 1929 contract.

History and background facts are helpful in determining facts directly in issue, and for that purpose only we may consider the 1925 transaction.

C. F. Bender, husband of appellant, Alice C. Bender, owned the property in question at the time of the foreclosure proceedings by the Louisville Title Company in 1925, and Kaelin bought the property at that sale. He then transferred the property to Mrs. Bender for the consideration stated above; but in 1929 another foreclosure suit was pending or threatened and Mrs. Bender being unable to meet the payments and thereby avert the pending foreclosure, she then entered into the 1929 contract herein above quoted whereby she was to and did convey the property to Kaelin for the stipulated consideration that Kaelin was to pay all indebtedness and incumbencies against the property and reconvey it to Mrs. Bender within the time fixed in the contract upon payment by her to him of such sums of money with interest as he may have expended on the property. It is obvious that Mrs. Bender desired to retain the property, and she entered into this arrangement with Kaelin for the purposes of forestalling foreclosure proceedings and conveyed the property to him for that purpose only, and in the meantime retined the right to repurchase the property. In view of these facts, it is obvious that the contract and deed read together partakes of all the characteristics of a mortgage. It has often been held by this court, and courts of other jurisdictions, that a deed of conveyance with a right to repurchase by the grantor within a specified time is, in effect, a mortgage to secure the payment of money, and will be so treated by the courts. The deed itself makes no provisions for the repurchase of the property by Mrs. Bender, but the contract between Mrs. Bender and the Kaelins did so provide, and, as between the parties, the contract must be read into and considered as a part of the deed. See Oldham v. Halley, 26 Ky. (2 J. J. Marsh.) 113); Fulwiler v. Roberts, 80 S. W. 1148, 26 Ky. Law Rep. 297; Guenther v. Wisdom, 84 S. W. 771, 27 Ky. Law Rep. 230; Tucker v. Witherbee, 130 Ky. 269, 113 S. W. 123; Scholl v. Hooper, 134 Ky. 83, 119 S. W. 770; Moore v. Williamson's Ex'r, 192 Ky. 790, 234 S. W. 732.

In ascertaining the intention of the parties to an instrument to determine whether the instrument is a

conditional sale or a mortgage, the courts will be guided more by the substance than the form of the transaction, and, when doubtful, will always construe the contract to be a mortgage, because such construction will be more apt to prevent fraud and oppression. Lunsford v. Colwell, 199 Ky. 326, 250 S. W. 993; Tucker v. Witherbee, supra; Howe v. Courtney; 107 S. W. 206, 32 Ky. Law Rep. 711; Ellis v. Winlock, 110 Ky. 676, 62 S. W. 495, 23 Ky. Law Rep. 60; 19 R. C. L., sec. 44 et seq.

The contract here in question considered with the pertinent facts and circumstances, measured to the authorities herein cited, impell us to the conclusion that the instrument should be given the effect of a mortgage rather than a mere option to purchase. The contract being collateral to the deed, it is binding only as between the parties thereto and does not affect Brown's title to the property conveyed to him by Kaelins; but such conveyance by Kaelin constituted a breach of the contract with Mrs. Bender. Mrs. Bender pleaded and testified that it was her intention and desire to repurchase the property according to the terms of the contract, and that she would have done so had not Kaelin conveyed the property, thereby putting it out of his power to complete the contract.

Having reached these conclusions, it follows that Mrs. Bender was entitled to recover of Kaelin for the wrongful disposition of her property. The measure of damages is the difference, if any, between the fair market value of the property at the time it was conveyed by Kaelin to Brown, and the sum Mrs. Bender owed Kaelin at that time, i. e., the sum Kaelin had paid on the property under the contract, but in no event less than the price or value received for it by Kaelin. Ellis v. Winlock, supra. Under the doctrine of the Ellis Case and other similar cases, Kaelin was trustee of the proceeds of the sale of the property and entitled to so much thereof as would reimburse him for the sum, with interest, he had paid on the property. In determining the value of the property, the price Mrs. Bender would have paid Kaelin had the contract been performed, nor the price or value received for it by Kaelin from Brown, will not be conclusive of its value. If the property was of a greater value than Mrs. Bender's contract price or the price received for it

by Kaelin, in that event Mrs. Bender would be entitled to her bargain. But on the other hand, if the value of the property is only equal to or less than Mrs. Bender's contract price, no damage could result to her by reason of the breach of the contract. There is much proof in the record with relation to the value of the property at the time of the conveyance by Kaelin to Brown, but the chancellor decided the case upon the theory that the contract was an option, and made no finding with respect to the value of the property.

Under the record before us we are unable to determine the exact value of the property or the status of the accounts between Mrs. Bender and Kaelin, hence we direct no specific judgment.

Upon a return of the case the court will determine the value of the property and the status of the accounts between the parties, and adjust the damages, if any, on the basis above indicated.

The judgment is reversed and remanded for proceedings consistent with this opinion.