## Roberts v. Asher.

(Decided May 5, 1936.)

C. W. HOSKINS for appellant.

L. D. LEWIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—
Affirming.

On February 25, 1935, A. J. Asher instituted a forcible detainer proceeding against Bob Roberts in the county court of Leslie county. The property involved is located on Short creek, in that county, and is known as "the Mack Mosley place." The jury returned a verdict in favor of Asher, and in due time Roberts filed a traverse and proper bond, and the proceedings were transferred to the circuit court. There the cause was submitted to the court for trial without the intervention of a jury, and the court, after stating in writing its conclusions of fact separately from its conclusions

of law, again found in favor of Asher. From that finding, this appeal is prosecuted.

The facts disclosed by the record and found by the circuit court may be summarized as follows: Several years ago Asher leased the premises to Roberts, and the lease was renewed from year to year.

On May 2, 1932, Asher conveyed the premises and other property to Sidney Helton, wife of Carter Helton, by deed absolute on its face, and giving the consideration as $1 and other good and valuable consideration. On the same day Asher, as party of the first part, entered into a written agreement with Sidney Helton and Carter Helton, her husband, parties of the second part, and Morgan Helton, party of the third part, reciting that Carter Helton had paid or assumed to pay certain indebtedness of Asher, and stating that the deeds referred to in the agreement were made by Asher to Carter Helton's wife to indemnify him against loss, and providing that if Asher paid or caused to be paid to Carter Helton the sums which Helton paid and was required to pay, together with interest, the land should be reconveyed to Asher. It was further provided that Asher should have two years from the date of the contract to reimburse Carter Helton, Sidney Helton, and Morgan Helton for any money they or any of them might pay out for Asher. The written agreement was not put to record.

On May 3, 1934, Sidney Helton and her husband, Carter Helton, conveyed the property to Farmer Helton, of Rockcastle county, for the recited consideration of $1,500 cash.

Roberts continued to pay the rent for the premises either to Asher or to his agent until January 1, 1935. Soon thereafter Asher demanded the rent for the year 1935, but Roberts refused to pay on the ground that he had rented the premises from Farmer Helton, who claimed to be the owner of the land. According to Roberts, he received no request for the rent for the year 1935, but on or about the middle of February he met Farmer Helton in Hyden, and Farmer Helton told him that he was the owner of the Mack Mosley farm, and he purchased it from A. J. Asher some two years before. He and Farmer Helton then went to the coun-

ty clerk's office and examined the records. They found a deed from A. J. Asher to Sidney Helton, dated the second day of May, 1932, and another deed from Sidney Helton and Carter Helton, her husband, to Farmer Helton, dated May 3, 1934, both absolute on their face. Farmer Helton asked him if he wanted to rent the property again for the year 1935, and he replied that he did. Thereupon he and Farmer Helton agreed upon a lease for the year 1935 at a rental of $25, which amount he paid to Farmer Helton in cash. Some time after that he received notice from Asher to vacate the premises. He took the lease from Farmer Helton in good faith, believing that Farmer Helton was the rightful owner of the land. He had no knowledge or notice, either actual or constructive, that A. J. Asher was still claiming the land or any interest therein, and he had no notice, actual or constructive, of the written contract between A. J. Asher and Sidney and Carter Helton, or of any understanding between them in regard to the land.

The court's conclusion of law was that Roberts could not deny the title of Asher unless Asher had conveyed the property, and that the deed which Asher made to Sidney Helton, read in connection with the supplemental agreement of the same date, was in fact a mortgage and did not relieve Roberts of the duty of acknowledging the title and right to possession of his landlord.

The general rule is that the estoppel of the tenant to deny the title of his landlord extends only to the title at the time of the lease, and the tenant is not precluded from showing that the landlord's title has expired or been extinguished. 16 R. C. L., p. 665, sec. 151. Merryman v. Bourne, 9 Wall. 592, 19 L. Ed. 683. So broad is the rule, that the landlord's property when sold under execution may be purchased by the tenant in possession thereof, and he is not estopped by the relation that exists between them. Casey v. Gregory, 13 B. Mon. 505, 56 Am. Dec. 581. Indeed we have a statute providing that, if the owner or holder alien or assign his estate or term, or the rent thereafter to fall due thereon, his alienee or assignee may recover such rent, section 2304, Kentucky Statutes; and where, on a conveyance of property subject to lease, the lease is

assigned by the grantor to the grantee, the latter is entitled to all the rights of the lessor, not only by virtue of the assignment, but by virtue of the statute, and is entitled to recover the rent. Ventura Hotel Co. v. Pabst Brewing Co., 109 S. W. 354, 33 Ky. Law. Rep. 149. We may also add that the statute (Ky. Stats. sec. 2298) providing that the attornment of a tenant to a stranger shall be void unless it be with the consent of the landlord, or pursuant to, or in consequence of, the judgment of a court, applies only to a stranger, and the grantee of the landlord is not a stranger within the meaning of the statute or the general rule on the subject. Raines v. Hindman, 136 Ga. 450, 71 S. E. 738, 38 L. R. A. (N. S.) 863, Ann Cas. 1912 C, 347. Furthermore, in view of section 2304, Kentucky Statutes, supra, the general rule that in an action of forcible entry and detainer, no question of title is involved, does not prevent the tenant from showing that during the tenancy the landlord has conveyed the premises.

It follows from what has been said that Roberts could defend on the ground that Asher had in some way parted with his title. The evidence shows that the deed to Sidney Helton, wife of Carter Helton, though absolute in form, was accompanied by a contemporaneous agreement for a reconveyance of the property on payment of certain debts. It follows that the deed was made for the purpose of securing the debts, and is therefore a mortgage. Skinner v. Miller, 5 Litt. 84; Louisville Joint Stock Land Bank v. Kenner, 255 Ky. 44, 72 S. W. (2d) 751; Bender v. Kaelin, 257 Ky. 783, 79 S. W. (2d) 250. A deed absolute on its face, but in fact a mortgage, will be adjudged a mortgage as between the original parties, and as against a subsequent purchaser with notice, but not against a purchaser for value without notice. Lewis v. Williams, 192 Ky. 763, 234 S. W. 317. No attempt was made by Roberts to put Farmer Helton, the grantee in the second deed, on the stand and prove by him that he purchased and paid value for the property without notice of the defeasance agreement. Indeed Roberts' position is that when Farmer Helton told him he had purchased the property, and the record disclosed that Asher had conveyed the property to Sidney Helton, and Sidney Helton and husband had conveyed the property to Farmer Helton,

he had the right to rely on the deeds, both of which were absolute in form, and to pay the rent to Farmer Helton, who appeared of record as the owner of the property, and Asher, who had misled him to his prejudice, was estopped by his deed to Sidney Helton to claim the contrary. Whether this position would be sound under other circumstances, we need not determine; Roberts had entered under Asher, and for years had been paying him the rent. Though Farmer Helton claimed and appeared to be the owner of the property, he acquired title from Sidney Helton, to whom Asher conveyed the property on May 2, 1932. Thus it was apparent to Roberts that, although Asher had conveyed the property to Sidney Helton, he himself for more than two years had been paying the rent to Asher without any claim on the part of Sidney Helton to the rent. We think this circumstance, in view of the relation of the parties, was sufficient to require Roberts to inquire of Asher concerning the situation, and to charge him with notice of all the facts that such inquiry would have elicited, and, therefore, the fact that the deed from Asher to Sidney Helton was a mortgage and not an absolute conveyance. It follows that the payment of the rent to Farmer Helton was not a defense to the action, and that the circuit court properly rendered judgment in favor of Asher.

Judgment affirmed. Whole court sitting.

Thomas, Justice (dissenting).

The opinion of the court overlooks what I conclude are some most important and material facts indisputably appearing in the record, the presence of which, according to my understanding of the law, destroys the only foundation for the ultimate conclusion reached, i. e., that appellant had wrongfully attorned and paid the rent to Farmer Helton as the apparent owner of the leased premises for the year 1935, when it was his duty to pay it to the appellee, Asher, whom the opinion concludes was appellant's actual and only landlord, and all for the reason given in the latter part of the opinion as precluding appellant from availing himself of the recorded conveyance of the premises by Asher to Sidney Helton on May 2, 1932, and her conveyance of the same premises (likewise recorded) to Farmer Helton on May 3, 1934. The reason as stated

in the opinion as a basis for the court's conclusion is expressed in this language: "Thus it was apparent to Roberts that, although Asher had conveyed the property to Sidney Helton, he himself for more than two years had been paying the rent to Asher without any claim on the part of Sidney Helton to the rent. We think this circumstance, in view of the relation of the parties, was sufficient to require Roberts to inquire of Asher concerning the situation, and to charge him with notice of all the facts that such inquiry would have elicited."

The omitted facts to which reference has been made (and which are undisputably proven) were and are, that the lease between Asher and Roberts was originally in writing, and for one year with the rental paid in advance. It was never renewed or extended in writing, but towards the close of each annual rental term Asher, by himself or through his agent, Knuckles (both of whom lived in Bell county), would either in person or by letter demand of Roberts, the same annual rental for the next year and which he paid in advance. Thus when the above recorded conveyance of May 2, 1932, was made by Asher to Sidney Helton, Roberts had already paid at the beginning of that year his annual rental for its entirety, and which term did not expire until January 1, 1933. On or before that expiration, pursuant to a similar demand, he paid the rental for the next ensuing year of 1934 and which was done at a time when he had no knowledge, actual or constructive, of Asher's conveyance to Sidney Helton, and, of course, never at any time did he have knowledge of the collateral defeasance writing executed by Sidney Helton, et al., to Asher, simultaneously with his conveyance to her.

The last advance payment and renewal pursuant to such a course of customary dealing between the parties continued appellant's lease until January 1, 1934; but (and this is a most important fact) Roberts, the tenant, did not receive any demand from either Asher or his agent to renew or extend the lease for the year 1935, but which demand, under the customary method of dealing between the parties, had always theretofore been made. As stated, his paid for occupancy during the year 1934 (made in latter part of 1933) could not be

disturbed without his consent by any conveyance of the premises that might be made during that term. Therefore, the deed executed by Sidney Helton and husband to Farmer Helton on May 3, 1934, could not and did not affect appellant's right to occupy the premises under his lease throughout that year. At the end of it, and contrary to the customary method of dealing, he received no request in any manner whatever from Asher, or any one representing him to renew and pay for the lease for the following year, 1935. However, he continued to occupy the premises until about the middle of February of that year, when he was approached by Farmer Helton to know what he desired to do with reference to continued occupancy of the premises, and who informed him for the first time that he had become the owner of the property, and which information was immediately confirmed by an inspection of the records. Whereupon he entered into a lease with the then title holder under absolute conveyance of record. Under such customary method of payment of rental and continuous renewals, I think that appellant was justified in concluding that something had happened to cause Asher to no longer be entitled to the rent, else he or his agent would have demanded it before the beginning of the year 1935 as they had always and continuously theretofore done.

Later when he became aware of the condition of the record concerning Asher's conveyance of the title, that which he was so entitled to surmise as having occurred was indisputably established. Under the statute and authorities cited in the opinion, he was not only authorized and justified thereafter in recognizing Farmer Helton as his true and actual landlord, but it was also (under the same authorities) his absolute duty to do in the absence of actual or constructive knowledge to the contrary, and it is conceded that there was none, except the faintly and remotely drawn inference from the fact that he renewed his lease in the latter part of 1932 with Asher or his agent after the former had conveyed the land in the previous May to Sidney Helton. But it should be remembered that appellant is not sought to be ejected from his occupancy during that renewal term, nor from his occupancy during the next following renewal term (for the year 1934), but only

from his occupancy during the term for the year 1935 —the right to which he had obtained from the owner of record about February 15 of that year. That term was obtained under circumstances hereinbefore pointed out, and which were calculated to create the belief in the mind of any reasonable person that his former landlord had ceased to be the owner of the premises, and which was later confirmed by the records in the county court clerk's office. This latter inference was and is, to my mind, much better supported than the one upon which the opinion is exclusively rested, and the latter is more than offset by it.

It is my opinion that the cited case of Lewis v. Williams, 192 Ky. 763, 234 S. W. 317, is conclusive of the question here involved. The only distinction between the two, as I conceive, is that the principle indorsed and approved in the cases referred to therein was where the innocent party was a purchaser of the entire title without notice of any right of defeasance as between the parties to the conveyance evidencing the title; while here Roberts was the purchaser of only one year's occupancy without such notice. If the want of notice of the existence of such defeasance agreements has the effect to perfect the title of an absolute purchaser of the entire title, it would seem to logically follow that the same consequence would result and the right be enforced in favor of a purchaser of a lesser title than the whole of it. If Asher or his agent had demanded of Roberts the customary verbal renewal or extension of the lease at the end of the year 1934 that had uniformly been done in all prior years throughout Robert's occupancy of the premises under the lease, then there might be some slight foundation for concluding that it was his duty, before leasing the premises from Farmer Helton, to have made inquiry such as the opinion holds it was his duty to have done. But as we have seen, no such customary request was made, and after the expiration of the time in which it had theretofore been made he had the right to conclude that his landlord had parted with his interest, and which, as we have stated, the records in the county court clerk's office confirmed.

The effect of the opinion, as I interpret and apply it, may be summarized thus: (1) A tenant cannot dis-

pute his landlord's title by attorning to a stranger or holder of an adverse title; (2) but that rule does not apply except as to the title that his landlord had at the time of entering into the lease contract, and if the landlord, in any manner approved by the law, parts with his title and conveys it to another, then the tenant not only may pay his rent thereafter to his new landlord, but that he must do so, and both of which I most heartily indorse. However, the opinion goes further and holds that (3), although the tenant may become informed by a solemnly executed deed of record that his landlord had parted with the title, he may not thereafter recognize the vendee, immediate or remote, in that deed as his true landlord if, during the year prior thereto, he attorned to his original landlord without notice of the conveyance; and that if he does recognize such vendee as his landlord and attorns to him without prosecuting an inquiry as to the correctness of the record, he does so at his peril. To such conclusion I am unable to subscribe.

An additional undisputed fact appearing in the record is that the secret defeasance writing taken by Asher from the vendees in his deed of May 2, 1932, gave him the right to perform the condition therein contained, converting that deed into a mortgage, within two years from its date (May 2, 1932). The deed to Farmer Helton was made two years and one day after that date (May 3, 1934), and if Roberts had known of that writing he would naturally have concluded that Asher had failed to discharge his obligations to the Heltons so as to convert his absolute deed of May 2, 1932, into a mortgage, and that following such failure the deed to Farmer Helton of May 3, 1934, was executed. The basis of the conclusion of the opinion is necessarily upon the theory of an estoppel, i. e., that Roberts is estopped to rely on the conveyance by Asher, and the later one by his vendee to Farmer Helton, because it was his duty to make an investigation which may or may not have led to the true facts. But it is my conclusion that the undisputed facts furnished no foundation for imposing any such investigating duty upon him. On the contrary, it is my conclusion that the facts boldly establish an estoppel on the part of Asher to insist upon the facts he relies in avoid-

ance of the defense interposed by Roberts to this forcible entry and detainer proceedings, and that the court erred in failing to so conclude.

For the reasons stated, I most respectfully dissent from the opinion announced by the majority.