## Carr v. Smith.
Feb. 16, 1940.

Rose & Rose for appellant.

C. B. Spicer for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—
Reversing in part and affirming in part.

Appellee, the plaintiff below, instituted this action against Wade Carr, the defendant below, wherein she sought to recover the rent of her store room which was occupied by him from November 30, 1936, to October 1938. The verified petition contained allegations entitling plaintiff to a general order of attachment under Section 194, subsections 7 and 8, Civil Code of Practice, which attachment was issued and levied on the stock of furniture in the store room. J. C. Carr, a son of defendant, filed an intervening petition setting up his ownership in certain tools and equipment in the store room upon which the attachment was also levied. The court instructed the jury to return a verdict for plaintiff against Wade Carr for the reasonable rental value of the store room for the time it was occupied by him, and to determine whether J. C. Carr or Wade Carr was the owner of the tools and equipment in the building. The jury returned a verdict for the plaintiff against Wade Carr for $908, and a verdict that J. C. Carr was the owner of the tools and equipment. Judgment was entered on the verdict in which the court sustained the general order of attachment levied on the furniture stock of Wade Carr and ordered same sold to satisfy the attachment lien, and in which the sheriff was directed to deliver to J. C. Carr his property.

We are asked to reverse this judgment because (1) plaintiff's action estopped her from collecting this rent; (2) the tenant cannot dispute his landlord's title and the attornment of the tenant to a stranger is void; (3) the attachment should have been discharged. No cross appeal is prosecuted by Mrs. Smith against J. C. Carr and we will eliminate him from the case at this point.

The plaintiff and her husband, Evan Smith, were divorced October 22, 1938, at which time Mrs. Smith paid her husband $2,500. He testified the payment was for his interest in this building, while Mrs. Smith testified it was made to him in settlement of a suit of five years' standing which she had with the administrator of his de-

ceased brother. The store room on which Mrs. Smith seeks to collect rent is in a building in Harlan formerly owned by her husband, who conveyed to her his interest therein in 1930; and on November 22, 1934, J. C. Smith, the father of her husband, deeded to her his one-half undivided interest in the building, and from that date she became the sole owner of the property. Her husband had a small stock of groceries in the store room and he rented that part not occupied by him to the defendant, Wade Carr, for $40 a month. He collected this rent for some seven months before Mrs. Smith had a written notice served on Carr by a deputy sheriff on November 30, 1936, to the effect that she was the owner of the premises as shown by the records in the county court clerk's office of Harlan County; that her husband had no authority to rent the store room, or to collect the rents therefrom, which notice closed with these words:

"You are hereby warned not to pay any rents to Evan M. Smith. If you do not desire to rent the premises from me and pay the rents to me, you are hereby notified to quit and give possession to me."

Mrs. Smith lived in Harlan, was on friendly terms with Carr, was in his store weekly and on occasions sought to collect the rent from him. Carr refused to pay her the rent, saying business was bad, and when she insisted upon his payment, he would reply that he had arrangements with her husband. She testified she never took any legal steps to collect the rent because of her regard for Carr's family, and for the further reason she did not care to go to the expense and the annoyance of bringing suit.

The evidence shows Mr. Smith converted the second story of the building into apartments and that he bore the expense of repairing the roof in the sum of $85. Carr reported to Smith that he had been served with written notice by Mrs. Smith, whereupon he was informed by Smith to continue the payment of the rent to him (Smith) or to get out of the building. Defendant's answer after traversing the allegations of the petition pleaded affirmatively that plaintiff stood quietly by and permitted defendant to pay the rent to her husband; that she never took any legal steps to prevent her husband from collecting the rent and that such action on her part now estops her from maintaining this action;

citing Fischer v. James A. Diskin Company, 247 Ky. 694, 57 S. W. (2d) 538; Haggard v. Green, 224 Ky. 441, 6 S. W. (2d) 487; and Prudential Insurance Company v. Bridgman, 256 Ky. 575, 76 S. W. (2d) 639.

We cannot see any element of equitable estoppel in this case. An examination of the authorities relied upon shows none of them sustain defendant's position; indeed, the Haggard case, supra, is squarely against it. In that case the court cited Pomeroy's Equity Jurisprudence, Vol. 2, Section 804, to the effect that equitable estoppel is the effect of voluntary conduct of a party which precludes him from enforcing his right against another who has in good faith relied upon such conduct and has been led thereby to change his position to his detriment. Haggard v. Green, supra, concerned the fencing of a passway, and Green warned Haggard of his claim before the fence was built. Despite that warning, Haggard built the fence. We held Green's failure to take action from the time he gave the warning until suit was filed did not estop him. That case is quite similar to the one at bar, as Mrs. Smith stood on her written notice which she had served on Carr, and in addition thereto she saw him in person and attempted to collect the rent without avail. The fact that she did not institute suit for two years does not work an estoppel upon her, because her notice warned Carr not to pay the rent to her husband but to her.

It is argued by Carr that he could not deny the title of his landlord, Evan Smith, and that he could not attorn to Mrs. Smith and pay the rent to her without the consent of his landlord, citing Section 2298, Kentucky Statutes, and Roberts v. Asher, 264 Ky. 73, 94 S. W. (2d) 289. Section 2298, Kentucky Statutes, provides a tenant's attornment to a stranger is void unless it be with the consent of the landlord. But clearly Mrs. Smith was not a stranger as she had complete title to the property. This section further provides a conveyance or devise of a rent, reversion or remainder shall be valid without an attornment; but that if the tenant should pay the rent to the grantor before notice of the conveyance, he shall not suffer any damage thereby. We do not see how this statute in any way militates against Mrs. Smith collecting this rent. Section 2304, Kentucky Statutes, provides where the property is con-

veyed, the grantee may recover the rent which thereafter falls due. Roberts v. Asher, supra, holds both in the majority opinion, as well as in the dissent, that where property is conveyed the tenant must pay the future rents to the grantee.

The petition is sufficient to support a general order of attachment. It alleges the plaintiff is entitled to recover of the defendant $1,725 in rents, and in the paragraph following this allegation, the plaintiff alleges that her claim is just and "she believes she ought to recover of defendant the sum of $1725.00." The jurat recites that the allegations of the petition are true "as she verily believes." It will be noted plaintiff made the direct and positive allegation that the defendant was indebted to her in the sum of $1,725, followed by the direct and positive allegation he was disposing of his property, or was about to do so, with the intention to defraud his creditors. When such positive allegations are followed by a jurat which states the plaintiff believes the same to be true, the affidavit is not subject to the criticism pointed out in Colovas v. Allen Motor Company, 242 Ky. 93, 45 S. W. (2d) 809. In the Colovas case the affidavit alleged plaintiff believed defendant did not have property subject to execution, and the jurat stated the plaintiff believed the allegations in the petition were true. Hence, when the jurat and the averments of the affidavit were taken together nothing was stated except the plaintiff's belief. In the instant case plaintiff's averment that she believed her claim was just did not affect the other averments in her petition which were positive and direct that the defendant was indebted to her and that he has sold, or is about to dispose of, his property with fraudulent intent.

However, the proof failed to show that plaintiff was entitled to an attachment, and after all the evidence was in, the court should have sustained defendant's motion to discharge same. The only grounds alleged in the petition for an attachment were under Section 194, subsections 7 and 8, Civil Code of Practice, that the defendant had sold or was about to sell his property with the fraudulent intent to cheat, hinder or delay his creditors. The answer denied these allegations and plaintiff's only proof was that defendant had, in September before the attachment was levied in October, remarked to one or

two acquaintances that business was bad and he thought he would sell out and quit. Such evidence is not proof that the defendant was about to sell his property to defraud his creditors, since it could just as likely be anticipated that his intention was to sell out his business and pay his debts. Attachments are summary proceedings and their technical requisites are strictly construed. Clolinger v. Callahan, 204 Ky. 33, 263 S. W. 700. We do not think a merchant's complaint, made in a casual conversation to friends, that business was so bad he was thinking of selling out and quitting was proof that he intended to sell and dispose of his property for the fraudulent purpose of cheating, hindering or defrauding his creditors; Huffman v. Martin, 226 Ky. 137, 10 S. W. (2d) 636. We cannot agree with defendant that the allegation one has sold his property with fraudulent intent is inconsistent with the allegation that he is about to do so.

The judgment is reversed in so far as the attachment was sustained, but in all other respects it is affirmed.